ANDREWS vs. THE FARMERS' LOAN AND TRUST COMPANY,
impleaded with another.

CONSTITUTIONAL LAW: *Power of legislature to restrict issue of injunctions— Ch.* 175, *Laws of* 1861.—RAILROADS: *Injunction against use of land by R. R. Co. until compensation made; effect of land owner's laches.—Neglect to pay judgment for trespass, no ground for injunction.*

1. *It seems* that ch. 175, Laws of 1861, which forbids the issue of injunctions to restrain a railroad company's occupying land for its road until the damages shall have been assessed and judgment rendered therefor, is valid.

2. But whether that part of the act be valid or not, such injunction should not be granted in this case, where the plaintiff did not purchase the land until four years after the company had occupied a part of it for its track, nor bring suit until four years after his purchase; nor take the steps authorized by sec. 2 of the act, to have the damages determined.

3. The failure of the railroad company, or those who have succeeded to its interest, to pay a judgment against it for a *trespass* upon the land, is no ground for such an injunction.

APPEAL from the Circuit Court for *Rock* County.

Application for an injunction. The complaint states that the Racine & Mississippi R. R. Co., one of the defendants, in 1856, constructed a part of its main track in front of a certain lot in the city of Beloit, and over the adjoining half of the street, and said structure has ever since been

used as a part of said railroad track; that one Russell, who, on the 22d of November, 1858, was owner of said lot and half the street in front thereof, and " had previously suffered damage from the building and continuance of said track up to that time," recovered a judgment against said railroad company for $800, " for the damages which he had sustained up to that time," which judgment remains unpaid and in full force; that on the 17th of December, 1863, Russell sold and assigned the judgment to plaintiff, and the whole amount thereof is due from said railroad company to plaintiff. It is further alleged that since the date last mentioned, plaintiff has been owner of said lot, etc., and has suffered and still suffers damage from the use of said track; that neither the railroad company nor any other person has ever had license to build, continue or use the same; nor has the railroad company ever taken any proceedings, as required by its charter, to acquire the right to construct or use said track on said land; nor has it or any other person made or offered to the owner of the lot any compensation; and that said track is now used for the purpose aforesaid by the *Farmers' Loan and Trust Company*, under some arrangement between it and the railway company to the plaintiff unknown, which use is wholly wrongful and injurious to plaintiff. Prayer, that defendants be restrained from further using said track for the purpose aforesaid without first making compensation to plaintiff for all damages sustained by him as aforesaid to the amount of $1,000, and the amount of said judgment in favor of Russell, and acquiring, in the manner provided by its charter, the right to continue such track, etc. *The Farmers' Loan and Trust Company* answered separately, denying the alleged damages, alleging certain facts which need not be stated here, and further alleging, " upon information and belief, that the judgment mentioned in the complaint was entered by stipulation between the

parties thereto, and it was the intent and meaning of said parties that said judgment should include all damages, past and prospective, resulting to all parties interested in said premises, by reason of the appropriation and use by said railroad company of [the land in question] for railroad purposes, and to vest in said railroad company a permanent and absolute right to said premises for the purposes aforesaid."

At the trial, the judgment roll in the suit of Russell against the Racine & Mississippi R. R. Co. was put in evidence. The first count of the complaint alleges that said railroad company, on etc., and at divers other times between the day specified and the commencement of the suit, " broke and entered the plaintiff's close," situate, etc., and with its laborers, etc., has taken possession of a portion of said close, and has continued in possession thereof, running and operating its railroad, without plaintiff's consent, to his damage, etc. The second count, after averring plaintiff's ownership of the premises and defendant's entering and constructing its road thereon without his consent, and after detailing facts to show the nature and extent of the damage, avers that by reason of said facts the plaintiff " is greatly damnified by said defendant in the use and enjoyment of his said building and lot, and carrying on his trade and business; wherefore he demands judgment for the sum of $3,000, with the costs of this action." No answer was filed to this complaint, but it was stipulated on the part of the defendant railroad company, that judgment might be taken against it for $800 damages, and $50 costs; and judgment was entered accordingly.

The other evidence in this cause need not be stated. The court found the facts as alleged in the complaint, with some additions and modifications not important here; and rendered judgment restraining the defendants, and all per-

sons claiming under them, from operating said railroad over the premises until payment to plaintiff of the amount of the Russell judgment, with interest, etc., or until they should "institute proceedings to have the damages to said premises by reason of the location and operation of the railroad, assessed as provided by law, and pay the costs of this action. From this judgment the *Farmers' Loan and Trust Company* appealed.

*Todd & Converse*, for appellant, cited *Davis v. R. R. Co.*, 12 Wis., 16; *Pettibone v. R. R. Co.*, 14 id., 443–48; Redfield on Railways, 173, § 19 and notes, and 157; Pierce on Am. R. R. Law, 168 and note 1; ch. 175, Laws of 1861.

*Matt. H. Carpenter*, for respondent, to the point that a corporation cannot acquire a right to permanently appropriate land to its use without first making compensation, cited *M. & H. R. Co. v. Eble*, 4 Chand., 72; *Same v. Hart*, id., 88; *Shepardson v. R. R. Co.*, 6 Wis., 605; *Powers v. Bears*, 12 id., 213. He also cited as decisive of this case, *Pfeifer v. S. & F. R. R. Co.*, 18 Wis., 155.

Cole, J. This action is brought to restrain the railroad company from using its track or operating its road over the premises mentioned in the complaint, until the company makes compensation for the land taken for its road, and also pays the amount of the Russell judgment therein described. A judgment was rendered granting in part the relief asked. This judgment we deem erroneous. By section 2, chap. 175, Laws of 1861, it is provided that when a railroad company has appropriated land for the use of its road, without having the damages assessed, and without making compensation, the person interested in such land may have commissioners appointed at the expense of the company, or may call out the commissioners authorized by the charter of the company, to appraise the damages; and

it declares that "no injunction shall be granted by any court to prevent the use or occupancy of such land by any railroad or railway company, until the amount of damages to which any owner or person interested [is entitled] shall have first been liquidated, or final judgment rendered therefor." It will be readily seen that this statute changes the law in regard to granting injunctions which was in force when the cases of *Davis v. The La Crosse & Miss. R. R. Co.,* 12 Wis., 16, and *Ford v. The Chicago & Northwestern R. R. Co.,* 14 id., 609, were decided. See likewise *Pettibone v. La Crosse & Mil. R. R. Co.,* id., 443. In the case of *Pfeifer v. The Sheboygan & Fond du Lac R. R. Co.,* 18 Wis., 155, the lands had been appropriated to railroad purposes by the Sheboygan & Mississippi Company, and damages had been assessed, but never paid. The road had been sold on a mortgage foreclosure, and purchased for the benefit of the bondholders, who had organized and formed the defendant company. And the action was brought to compel the new company to pay the judgment for damages assessed for the land taken for the use of the road by the old company. It was held that the action would lie. But it is not apparent how the doctrine of the *Pfeifer* case can apply here. It certainly cannot have any application unless, indeed, the judgment obtained by Russell in November, 1858, against the Racine & Miss. R. R. Co., can be treated as a judgment for damages for taking the premises for the use of the road. But that judgment was recovered by Russell in an action of trespass brought by him against the railroad company. It is so described in the complaint in this action, and the record in that case, which was offered in evidence, shows most indubitably that that action was for trespass *quare clausum,* and was not for obtaining compensation for the land taken. It is true that it is alleged in the answer that the judgment in the case of Russell v. The Racine and Miss.

R. R. Co. was entered by stipulation between the parties thereto, and that it was the intent and meaning of the parties that the judgment should include all damages, past and prospective, resulting to all parties interested in the premises by reason of the appropriation and use of the half of the street for railroad purposes; but nothing of the kind appears in the record of that case; and the plaintiff obviously does not so understand the nature and character of that judgment. For he asks that the company be enjoined from using its track upon the premises until it makes compensation for all damages sustained by him for the use aforesaid, to the amount of $1,000, and pays the Russell judgment, and also acquires the right, in the manner provided by its charter, to permanently appropriate the premises for railroad purposes. This shows that the plaintiff did not suppose that the Russell judgment was for damages for appropriating and occupying the street and premises for the use of the road—as it evidently is not; and the complaint is not framed upon that theory. Damages for taking the land are still to be assessed; and the law of 1861, above cited, enacts that no injunction shall issue to prevent the company from using its track over the land until the amount of damages to which the owner is entitled shall have been liquidated, or final judgment rendered therefor. The injunction in this case seems to be in violation of this statute. For it restrains the defendant from operating the railroad over the half of the street adjoining the lot mentioned in the complaint, until the Russell judgment and interest thereon are paid; or until proceedings are instituted by the company to have the damages assessed by reason of locating its track thereon. Whether, in any event, considering the matters stated in the answer and appearing in the evidence, the *Farmers' Loan & Trust Company* can be held liable to pay the Russell judgment, is a point upon which we express

no opinion at this time. Even if liable to pay that judgment, this judgment for a perpetual injunction must be reversed.

*By the Court.*—The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings according to law.

On a motion by the respondent for a rehearing, *Mr. Carpenter* argued, 1. That since the constitution of this state vests in the circuit courts jurisdiction at law and in equity, and provides for the issue of the writ of injunction, the legislature cannot forbid this writ in a case where, by the general principles of equity jurisprudence, it is the appropriate remedy. 2. But for ch. 175, Laws of 1861, plaintiff would unquestionably be entitled to the writ in this case, unless defendant could show that by purchase, or by an exercise of the right of eminent domain, it has acquired the right to use and occupy the premises in question. *Bonaparte v. R. R.*, Baldwin, 205, and cases there cited; *Terrett v. Taylor*, 9 Cranch, 43, 55; *Bank of Hamilton v. Dudley*, 2 Pet., 526. 3. " To render the exercise of the power of eminent domain valid, a fair compensation must in all cases be *previously* made to the individual affected." *Gardner v. Newburgh*, 2 Johns. Ch., 166; and the constitutional provision forbidding his property to be taken without such compensation " would be most grossly violated by compelling him to resort to a law suit in order to recover the value of the property taken." *Shephardson v. R. R. Co.*, 6 Wis., 613. See also *Bonaparte v. Railroad, Supra; Johnson v. Alameda Co.*, 14 Cal., 106; *Colton v. Rossi,* 9 id., 595; *Penrice. v. Wallis*, 37 Miss., 172.

COLE, J. On the motion for a rehearing, the counsel for the respondent has raised the question of the constitution-

ality of the law of 1861, upon which this cause is decided. He contends that this law is invalid, because it attempts to deprive a court of equity of the power to issue a writ of injunction in a case where, by the general principles of equity jurisprudence, it is the appropriate remedy. The plaintiff, he says, complains of a continuing trespass injurious to his property, and, but for this statute, he insists there is no doubt but a writ of injunction would issue to restrain it. The effect of this law, it is argued, is to permit private property to be taken and used permanently by a railroad corporation without compensation being first made, as the constitution requires, and deprive the party injured of an injunction to restrain such use. How far it is competent for the legislature to deprive courts of equity of the power to issue injunctions in all cases where that remedy has been heretofore granted, we will not undertake to determine. For, although the remedy by an injunction, temporary or permanent, is extensively afforded by courts of equity, yet whether the writ shall issue in a given case depends wholly upon the equitable circumstances of that case. Hence the authorities say that the granting or refusal of an injunction is a matter resting in the sound discretion of the court. This discretion the legislature has attempted to control, where certain facts exist. That is, in a case where the owner has permitted a railroad company to construct its track across his land, or where the land shall have been appropriated by the company for the use of its road without compensation having first been made therefor, then the owner must resort to his other legal remedies for redress; or, after the damages have been assessed by commissioners, he may have an injunction to restrain the company from further using the land, if it neglects to pay such damages. But the court is not to interfere by way of injunction before the damages have been assessed. The statute seems to be

framed on the idea that there has been some delay on the part of the owner in asserting his rights, or some acquiescence in the use of his property, by the corporation, which renders it inequitable that he should have an injunction in the first instance. It is a familiar principle, that if a party is guilty of *laches* or unreasonable delay in the enforcement of his rights, he thereby forfeits his claim to equitable relief. *Sheldon v. Rockwell*, 9 Wis., 166. And this statute seems to be based upon this principle, and attempts to control the discretion of the court in granting injunctions where certain facts exist. Is it not competent for the legislature to enact such a law? If seems to us that it is. At all events, when applied to the facts of this case, the law would not seem to operate very inequitably. For it appears that about the 1st of September, 1856, the defendant, *The Racine & Milwaukee Railroad Company*, laid down its track in and upon the north half of the public street opposite to and adjoining the lot mentioned in the complaint, and has used that portion of the street ever since for the purposes of its road. On the 17th day of December, 1861, the plaintiff became the owner of that lot. Of course, he must be presumed to have taken his conveyance with full knowledge of the fact that the company had been operating its road upon the street adjoining his lot for several years. He waits more than four years longer before taking any steps to enforce his rights. He then comes into court, and asks that the company be restrained from further using or operating its track at that place, until it has done certain things. Under these circumstances it would not seem inequitable to say, in the absence of the statute we have been considering, that he is not entitled to an injunction. His other legal remedies are open to him; or he may have the damages assessed, and then apply for an injunction if they are not paid.

For these reasons the motion for a rehearing must be denied.

*By the Court.*—Motion denied.