## H. O. TENNY and NEIL McKENZIE, Partners under the Firm Name of TENNY & McKENZIE, Respondents, v. N. E. MULVANEY and E. C. BEMIS, Appellants.

EVIDENCE—INADMISSIBLE QUESTION.—Where the contract provided for the delivery of good, sound, merchantable logs, to be cut from standing timber within a mile from a certain creek, and there was evidence showing that the logs were cut within a fourth of a mile from said creek, and that where the logs were cut the timber was inferior, and a great many trees were rotten; *Held*, that the question, "Are these average logs on the ground where they were cut?" was inadmissible.

IDEM.—Where a witness was asked the question, "Are these as good logs as other logs on the creek?" and there was no evidence showing the kind or quality of the other logs on the creek, or what particular other logs on the creek were referred to; *Held*, that the question assumed a fact which it was the object of the question to prove, and was incompetent.

ERROR—ASSUMING FACTS NOT IN EVIDENCE.—It is error sufficient to reverse a judgment to permit counsel to state, against objection, facts not in evidence and pertinent to the issue, or to assume, *arguendo*, such facts to be in the case when they are not.

APPEAL from Douglas County. The facts are stated in the opinion.

*Wm. R. Willis*, for appellants.

*L. F. Lane, Hermann & Ball*, and *Kelsay & Burnett*, for respondents.

By the Court, LORD, C. J.:

The plaintiffs allege, substantially, that on the twenty-ninth of May, 1878, plaintiffs made an agreement with defendants by which plaintiffs agreed to furnish defendants at their boom in Pass creek, in Douglas county, good, sound, merchantable logs for the agreed price of four dollars and twenty-five cents per one thousand feet; and defendants agreed to scale and pay for each one hundred thousand feet when placed in floating water above the boom;

That plaintiffs delivered in said boom one hundred and sixty-five thousand one hundred and sixty-nine feet of

33

good, sound, merchantable logs, and also delivered in float-
ing water above the boom one hundred and thirty-nine
thousand six hundred and fifty-four feet under said agree-
ment. The defendants thereby became liable to pay plaint-
iffs therefor one thousand two hundred and eighty-five dol-
lars and forty-nine cents;

That one hundred and thirty-five dollars has been paid,
and there is now due one thousand one hundred and fifty
dollars. Plaintiffs demanded payment, but defendants re-
fused to pay any part thereof. And for other and separate
cause of action alleges substantially:

That by the terms of said agreement defendants agreed
to furnish the standing timber within one mile of the creek,
and to scale and pay plaintiffs for each one hundred thou-
sand feet when placed in floating water; and plaintiffs were
to deliver to defendants, at their boom in Pass creek, one
million feet of good, sound, merchantable logs, with priv-
ilege of furnishing as much more as they could put in the
creek within one year; that after making said agreement
plaintiffs had partially completed it, and had cut a large
amount of logs, and were proceeding to completion, etc.;

That on the fourteenth of August, 1878, without fault or
consent of plaintiffs, the defendants rescinded and breached
said contract, and refused to receive the logs so cut and
ready to be delivered, and prohibited plaintiffs delivering
the same, and refused to scale or pay for the logs in float-
ing water, and still refuse to pay for said logs, etc.;

That plaintiffs have been ready and willing to deliver,
and would have delivered before the expiration of the year,
one million five hundred thousand feet, if they had not
been prevented by defendants;

That plaintiffs have been damaged, by defendants breach-
ing said contract, in the sum of three thousand dollars, in
addition to amount claimed in foregoing cause of action,
and the same has not been paid; and set up another cause
of action not material to this appeal, and demand judg-
ment for four thousand and ninety dollars and fifty cents.

Defendants for answer deny that the agreement was to
furnish logs at four dollars and twenty-five cents per thou-

sand, etc., but allege that plaintiffs were to furnish one million feet within one year, and to keep logs on hand so that the mill should not be shut down during the year for want of logs, at the rate of four dollars and twenty-five cents per thousand, with the privilege of putting in more if it could be done within the year, at the same price. Deny that the defendants agreed to pay for each one hundred thousand feet, or any part thereof, until the contract was completed at the end of the year. Deny the amount of logs delivered in the boom and in floating water. Deny the indebtedness of one thousand one hundred and fifty dollars, or any part thereof. And allege that no part of the money claimed was due at the commencement of this action, or before the completion of the contract at the end of the year; and for answer to plaintiff's other and separate cause of action. Deny that by the terms of said agreement defendants were to pay for each one hundred thousand feet of logs when placed in floating water in said creek, or any part thereof, until said contract was completed at the end of the year.

Deny that defendants breached the contract in any manner, or that plaintiffs were able, or willing, or would have furnished one million five hundred thousand feet of logs within the year, or any part thereof, if they had not been prevented by defendants. Deny that plaintiffs have been damaged by defendants in any sum.

Defendants further answering, and for counter-claim, allege: That defendants have at all times been ready and willing to perform the conditions of the agreement made the twenty-ninth day of May, 1878, a copy of which is hereto annexed, marked exhibit "A," and made a part of this answer as follows:

"Exhibit 'A.'—This article of agreement, made and entered into this twenty-ninth day of May, 1878, between N. E. Mulvaney and E. C. Bemis, of firm name of Mulvaney & Bemis, parties of the first part, and H. O. Tenny and Neil McKenzie, of the firm name of Tenny & McKenzie, parties of the second part. Parties of the first part agree to pay parties of the second part four dollars and twenty-five cents per thousand feet for good, sound, merchantable

logs, delivered at the boom in Pass creek; also agree to
furnish timber for logs not to exceed a mile from the bank
of the creek; to scale each one hundred thousand feet that
is in floating water.

"The. parties of the second part agree to furnish logs to
the parties of the first part, one million feet with privilege
of furnishing as much more as can be put in the creek in
the year, from this date, in the boom in Pass creek; the
parties of the second part shall keep logs on hand for the
parties of the first part, so that the mill shall not be shut
down during the year, and are to cut four hundred thou-
sand feet, more or less, from Richey canyon.

      (Signed)            "MULVANEY & BEMIS,
                       "TENNY & McKENZIE.

"Witness: J. W. KREWSON,
       " A. SHERRELL."

And allege: That plaintiffs failed and refused to comply
with said agreement; that they put into the boom and float-
ing water a large amount of unsound and unmerchantable
logs, and prevented defendants from getting in logs to keep
their mill running; that their mill was for a long time shut
down by reason of plaintiffs' failure to perform the condi-
tions of said agreement, on their part, to defendants' dam-
age four thousand dollars, and demand judgment for four
thousand dollars.

The replication denies the allegations in the counter-
claim. It appears by the bill of exceptions that plaintiffs,
to maintain the issues on their part, proved by McKenzie
that the timber in the vicinity of defendants' mill, where
the logs were cut, was inferior timber, and that a great many
trees were rotten. William Rosee was called by the plaint-
iffs, and asked: " Are these average logs on the ground where
they were cut?" Defendants objected. The court over-
ruled the objection, and the witness testified: " They were
average logs on the ground where they were cut." The con-
tract provides that the logs were to be good, sound, mer-
chantable logs, and to be cut within a space "not to exceed
a mile from the bank of the creek." It is claimed that logs

based on an average of the timber in the locality from where they were to be cut, in which there were "inferior timber, and a great many rotten trees," would not be the "good, sound, merchantable logs" for which the contract expressly provided.

It is to be presumed that the parties to the contract used the descriptive words, "good, sound, and merchantable," in the sense in which such words are generally used and applied at the place where the contract was to be executed, and in that sense understood that the particular locality within which the logs were to be cut contained that kind of standing timber which would furnish the "good, sound, merchantable logs" for which the contract called. The bill of exceptions does not disclose any testimony from which any definite opinion can be formed, as to what kind of logs would be commonly considered in the locality in which the contract was to be performed, as "good, sound, and merchantable."

That there were such logs within the area from which they were to be cut by the contract, is a fact directly testified to by the witness, Mattoon. He testifies that "there were a plenty of good, sound, merchantable logs within a mile of the creek," and also that plaintiffs "did not cut any logs that were more than a quarter of a mile from the creek."

Taking the testimony of this witness in connection with the testimony of McKenzie, that the timber in the vicinity of the mill, and where the logs were cut from, was inferior timber, and that a great many of the trees were rotten, and some idea may be formed as to what would be "average logs" on the ground where they were cut.

It should be observed, too, that the testimony of McKenzie does not exclude the idea that there was not sufficient standing timber not inferior, and trees not rotten, from which good, sound, and merchantable logs could be cut within a mile of the creek, as specified in the contract. At a former term, when this same case was before the court, a similar question was asked this same witness. The question then was, "Are these an average of the logs on Pass creek?" which is not exactly identical with the question

asked here: "Are these average logs on the ground where they were cut?"

In passing on the former question, the court said: "As the logs were to be taken from the standing timber in a particular locality, we are of the opinion that the question was properly admitted." The "average logs on Pass creek," which the court admitted to prove the kind of logs for which the contract expressly provided, was based on the general character of the standing timber from the whole area from which the logs were to be cut, and not on any limited space or ground on this area where the logs were cut. We admit the force of the argument that a decision once made in a case must continue to govern it, except when the record on the second hearing contains evidence of different or additional facts. (25 Mich. 463.)

It is our opinion that the question, "Are these average logs on the ground where they were cut?" was not admissible for the purpose for which it was offered. The contract was a written one, and the kind of logs to be furnished specified, and it was the agreement of plaintiffs to cut from the standing timber, within a mile from the bank of the creek, such logs only, without regard to the rotten trees and inferior timber, as would fairly comply with the terms of the contract, in the sense in which the terms used are commonly employed in contracts for logs in this locality, as before indicated.

The next objection is to the testimony of H. O. Tenny, one of the plaintiffs. Plaintiffs' counsel asked said witness: "Were these as good as other logs on the creek?" Defendants objected, and the objection was overruled, and the witness answered: "I hauled logs for Comstock, and these logs were as good logs as I hauled for Comstock." The objection was not to the question as leading, but as irrelevant and incompetent. There is no doubt but the question plainly suggests the answer desired. It seems to us to assume, too, that there were other logs on the creek which had been shown to be, or were the kind of logs for which the contract provided, and that these logs in dispute were as good as such other logs on the creek.

We do not think that a question which assumes as a fact that which is the object of the question to prove, is competent. To elicit competent evidence it must be by an appropriate question directed to the fact in controversy.

Another objection disclosed by the bill of exceptions, is that in the closing argument to the jury the counsel for the plaintiff stated that McKenzie testified that Mulvaney, one of the defendants, had agreed to remove the obstructions out of the creek. This was objected to, on the ground that there was no issue in the pleadings on that question. The court overruled the objection, and the counsel for the plaintiffs stated that the defendants had agreed to clear the creek of obstructions, and had failed to do so. It appears, by the bill of exceptions, that this evidence of McKenzie had been admitted during the trial without objection, and that some evidence had been given, tending to show that a portion of the logs which were in the water, and which were mixed with the logs in dispute, and claimed by the defendants to be rotten and unmerchantable, were drift logs from old drifts in the creek, and not put in by the plaintiffs, and that they floated down the creek and became mixed with the logs of plaintiffs, without their fault. It was in respect to this evidence to which counsel for plaintiffs alluded when he referred to the evidence of McKenzie, and counsel for defendants objected. The court declined to stop him, but said to counsel that it would in its charge instruct the jury not to consider this evidence of McKenzie, and no further allusion was made to it by Mr. Hermann, of counsel for plaintiffs.

In his charge, the court said: "There being no issue in the pleadings herein, nor in this contract, in regard to defendants cleaning out the creek, you can not consider that question, nor any testimony given on that question." We do not think that the rights of defendants were prejudiced in this matter, when it appears that the court, at the time the objection was made, stated to counsel that he would instruct the jury not to consider the evidence of McKenzie, and in his instructions specifically charged the jury they

could not consider that question, nor any testimony given on that question.

The next objection is that counsel for the plaintiffs, in his argument, stated that the creek was a public highway, and that defendants had obstructed it by placing a boom across it at their mill. Defendants objected to arguing this matter on the ground that there was no issue in the pleadings as to the creek or boom, and the objection was overruled, and the counsel stated to the jury that the defendants had obstructed the creek, a public highway, by placing a boom across it without authority of law; that it was this obstruction that prevented plaintiffs from separating the rotten and bad logs from the good logs.

It appears that defendants had offered some evidence tending to show that a portion of the logs put in the creek by plaintiffs were rotten and unmerchantable, and that to draw them out of the creek, in order to separate them from the good logs and get them out of the way at the boom, would cause them great expense. To obviate the effect of this evidence, plaintiffs offered some evidence tending to show that to put them through the boom and let them float down the creek would cost but little. Defendants then offered evidence tending to show that certain other persons were proprietors of a dam and mill below the boom, on the creek, and would not allow them to open the boom and let the logs pass down.

In his argument to the jury the counsel for the defendants claimed that the defendants could not be required to open their boom and let the logs float down the creek, rather than to draw them out of the creek with oxen, and it was in reply to this argument that counsel for the plaintiffs stated that defendants had obstructed the creek, a public highway, by placing a boom across it without authority of law, and that it was this obstruction that prevented the plaintiffs from separating the rotten logs from the good logs.

There is nothing in the contract, nor in the issue made by the pleadings, in respect to these matters. The only mention of the boom in the contract is the agreement of plaintiffs to deliver the logs at the boom in Pass creek.

There is a question raised by the evidence above stated about the expense it would require to separate the rotten logs from the good logs, by opening the boom and letting them float down the creek, or by hauling them out with oxen. If Pass creek is a public highway, it will be admitted that no one has a right to obstruct it, and if the defendants opened their boom and let rotten logs float down it, they would do so at their peril, and would be bound to see that they did not thereby obstruct its navigation, nor infringe upon the rights of private individuals. So, too, the defendants have a right to use a boom for the purpose of catching their logs, provided it does not obstruct the navigation of the creek; but we do not see the relevancy of these matters to the issue joined in this action. If the boom creates an obstruction to the navigation of the logs down the creek, it is a nuisance and can be abated; but that question is hardly involved in this case. There is not only no allegation in the pleadings, but there is no evidence disclosed by the record that authorized the counsel to make such statement to the jury. We think the effect was to mislead and confuse the mind of the jury to the prejudice of defendants.

It was also objected that the counsel for the plaintiffs stated to the jury that Mr. Bemis, one of the defendants, was absent, and had not been called as a witness. The objection was that there was nothing to show why Mr. Bemis was not present, or what his testimony would have been if present. The court overruled the objection, and counsel for the plaintiffs stated that "Mr. Bemis' testimony was willfully suppressed, and the jury had a right to presume that if he had been present and sworn, his evidence would have been adverse to the defendants." To this the defendants excepted.

The only charge made by the court in respect to this matter was that some evidence had been admitted, without objection, tending to show admissions of Mr. Bemis, one of the defendants, as to the quality of the logs furnished plaintiffs. Bemis was not sworn as a witness at the trial, nor was his evidence offered. The rule is, although fre-

quently violated, that counsel must confine themselves to facts in evidence. It is held to be the strict duty of the court to arrest an argument not based on evidence. (Weeks on Attorneys at law, sec. 112; Proffatt on Jury Trials, sec. 250; Hilliard on New Trials, sec. 40, p. 224.) And if objection be made to this course of argument, it is error for the court to permit it, and a new trial will be granted. (Same authorities.)

Counsel stated to the jury that Mr. Bemis was absent, and had not been called as a witness; and, against the objection of counsel for the defendants, argued that his evidence was willfully suppressed; and that the jury had a right to presume, if he had been present and sworn, that his evidence would have been adverse to the defendants. If the fact was in evidence that Bemis' evidence had been willfully suppressed, there would be no doubt of the presumption, as claimed by the counsel, but the record does not disclose any such fact. It is wholly gratuitous, and assumes, *arguendo*, a fact to be in the case when it is not. This is held to be error sufficient to reverse a judgment when allowed against the objection of counsel. (22 Wis. 292; 41 N. H. 317; 75 N. C. 306; 49 Ind. 33; 25 Ga. 225.)

The judgment is reversed, and the case is remanded to the court below for a new trial.