Argued January 23; reversed and remanded February 7, 1951

# WALKER *v.* PENNER

227 P. (2d) 316

*Allan G. Carson,* of Salem, argued the cause for appellant. With him on the brief was John H. Carson, of Salem.

*Asa L. Lewelling,* of Salem, argued the cause and filed a brief for respondent.

Before BRAND, Chief Justice, and LUSK, ROSSMAN, WARNER and TOOZE, Justices.

TOOZE, J.

This is an action by Cleo Walker, as plaintiff, against Jacob W. Penner, as defendant, to recover damages on account of the alleged negligent operation of a motor vehicle. There was a verdict and judgment in favor of defendant. Plaintiff appeals.

The accident involved here occurred shortly after midnight on June 2, 1946, on what is commonly known

as the "Gervais-Mt. Angel Highway," in Marion county, and about four miles west of Mt. Angel. This highway runs in a general easterly and westerly direction. At the place of the accident the paved portion of the highway is approximately 16 feet in width, with a narrow shoulder and a ditch on the south side, and a somewhat wider shoulder on the north. Also at that place there is a road running north known as the "Beardsley Road." For a considerable distance both east and west of the point where the accident happened, the highway is straight and level.

Plaintiff was a passenger in an automobile driven by Eugene Hoffer. Other passengers in that car were plaintiff's husband and Mrs. Eugene Hoffer. These parties were proceeding westerly along said main highway.

On rounding a curve about one-quarter mile east of the Beardsley road, the parties in the Hoffer car noticed two cars on the south side of the road, one with its lights shining upward and pointing in a northeasterly direction. As they neared the Beardsley road, they noted that one of the automobiles was in the south roadside ditch. This automobile in the ditch is referred to in the record as the Bochsler car. To the east of the Bochsler car and on the south side of the highway was what is known as the McKay car. As the Hoffer car arrived at the scene, McKay was in the act of hooking a tow chain to the Bochsler car to pull it out of the ditch.

Hoffer stopped his automobile across the road opposite the Bochsler car and near the entrance to the Beardsley road. All occupants of the Hoffer car got out to see if they could render assistance. No aid being needed, plaintiff got back in the front seat of the

Hoffer car. In the meantime, McKay had succeeded in pulling the Bochsler car back onto the highway, so at that time there were on the south side of the highway headed east the McKay car, the Bochsler car, and another car that had come from the west and stopped behind the Bochsler automobile. The headlights on all three cars were burning, with the lights on the McKay car on high beam.

About this time Hoffer got back in his car for the purpose of moving it ahead and off the highway. The front lights *and tail lights* on his car were burning. Before he could get his car moved, the accident happened.

The defendant was driving his car westerly on said main highway. As he rounded the curve in the road heretofore mentioned, he saw the lights of the three cars on the south side of the highway, with the lights of the lead car on bright. He testified that he thought those cars were moving. At the time, according to his own estimate of speed, defendant was traveling 52 miles per hour, more or less, and according to other witnesses, he was traveling from 60 to 70 miles per hour. Defendant testified that because of the bright lights on the McKay car he was unable to see anything on his own side of the road until he had passed beyond the rays of those lights. At that time he was from 60 to 100 feet from the Hoffer car. He set the brakes on his car and skidded in a straight line for approximately 34 feet and into the back of the Hoffer car. Upon the collision the two cars became locked together and went forward an additional 20 feet and across the entrance to the Beardsley road before coming to rest.

*At no time after rounding the curve and seeing the cars on the south side of the road did defendant slow*

*the speed of his car until he set the brakes immediately prior to the collision, even though apparently blinded by the McKay car lights.*

As a result of this collision, plaintiff claims that she suffered severe and permanent personal injuries.

Shortly after the collision and after defendant and his passenger, one "Meek," had left the scene of the accident, Hoffer and plaintiff's husband looked into defendant's car. On the front seat they found an *uncorked* whiskey bottle (size: 1/5 gal., labeled "Roamer. Blended whiskey. 86 proof") *with its contents almost gone* (there remained about an inch of whiskey in the bottom), together with an opened quart bottle of "Par-T-Pak" with its contents also almost gone. These bottles were removed from the car by Hoffer and turned over to plaintiff's husband for safe-keeping.

These bottles were produced at the trial by plaintiff and offered in evidence. Defendant objected to the offer on the ground that they were immaterial *and also moved to suppress such exhibits on the ground that they had been illegally obtained.* The trial court sustained the motion to suppress. Plaintiff assigns error in this ruling.

■ It was error to sustain the motion to suppress this evidence, even though it be conceded that the search and seizure were unlawful and therefore unreasonable within the meaning of U. S. Const. Amend. IV, and Or. Const. Art. I, § 9.

■ The Federal rule respecting the suppression of evidence procured by an unreasonable search and seizure, and which rule has been adopted in many states, refers largely, if not entirely, to criminal and quasi-criminal proceedings. It does not apply in civil cases between

individuals. The doctrine, and the reasons therefor, are very clearly set forth by the United States Supreme Court in the case of *Boyd v. U. S.*, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. 524. See also *Weeks v. U. S.*, 232 U. S. 383, 58 L. Ed. 652, 34 Sup. Ct. 341, L. R. A. 1915B 834, Ann. Cas. 1915C 1177; *Amos v. U. S.*, 255 U. S. 313, 65 L. Ed. 654, 41 Sup. Ct. 266; *Gouled v. U. S.*, 255 U. S. 298, 65 L. Ed. 647, 41 Sup. Ct. 261; *Youman v. Commonwealth,* 189 Ky. 152, 224 S. W. 860, 13 A. L. R. 1303.

■ Moreover, under the Federal rule where the evidence has been procured through an illegal search and seizure *by persons other than governmental officers or agents,* such evidence may be used upon the trial of the defendant and will not be returned to the owner, even though a seasonable application may be made therefor; and this is true regardless of whether the search was made with or without a warrant. *Burdeau v. McDowell,* 256 U. S. 465, 65 L. Ed. 1048, 41 Sup. Ct. 574, 13 L. R. A. 1159. The constitutional restrictions against unreasonable search and seizure are intended as a limitation on the powers of government, and not a restraint on the unauthorized act of an individual. *State v. Lock et al.,* 302 Mo. 400, 259 S. W. 116.

In harmony with the doctrine announced in the case of *Burdeau v. McDowell,* supra, state courts have held that the protection of the state constitutional provisions prohibiting unreasonable searches and seizures applied only to searches and seizures by state and municipal officers, and not to private citizens. *Kendall v. Commonwealth,* 202 Ky. 169, 259 S. W. 71; *State v. Owens,* 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383; *State v. Lock et al.,* supra.

Though the trial court based its ruling upon the

illegality of the search and seizure and suppressed the evidence, nevertheless, the defendant had objected that the offered exhibits were immaterial, and he urges that contention on this appeal. If immaterial, no error was committed in rejecting the offer, though the ground assigned therefor was wrong.

Before these exhibits were identified and offered in evidence, plaintiff had testified to a conversation which occurred later in the day of June 2 at the home of Meek. Present were Mr. and Mrs. Hoffer, plaintiff and her husband, the defendant Penner, and Meek. Plaintiff testified:

"Q. Did you have a conversation about the occurrence of the night before?

"A. Yes.

"Q. Did the defendant say anything in your presence about the matter?

"A. Well, Mr. Hoffer was concerned about his father's car, and they were talking, and Mr. Penner said *if nothing was said about his drinking that night* he would see that the car was fixed up." (Italics ours.)

Testifying to the same conversation, Cyril Walker, plaintiff's husband, said:

"A. Yes. He [Penner] told us that he—He said that *we should keep still about his drinking,* and he would take the blame." (Italics ours.)

In her complaint plaintiff charged defendant with negligence in that (1) he failed to maintain a lookout; and (2) he failed to have the Mercury under proper control; and (3) he drove and operated said automobile at a speed greater than was reasonable and prudent, having due regard to traffic, surface and width of said highway, the hazards at intersections and the aforesaid conditions then existing.

In *Lynn v. Stinnette*, 147 Or. 105, 31 P. 2d 764, this court said:

"No authority has been cited us, and our research has not revealed any, directly holding that intoxication must be specifically alleged as an act of negligence before evidence of that fact may be introduced. When the defendant alleged that the decedent failed to 'keep a proper or any lookout' for approaching automobiles, and failed to 'exercise reasonable or ordinary care for his own safety', it was not necessary to allege further the probative facts relied upon to show such negligence or want of care."

■ Upon the questions of whether defendant maintained a proper lookout, or had his car under control, or was traveling at a high and unlawful rate of speed under the circumstances, any evidence tending to show intoxication on his part, or to show that he was under the influence of intoxicating liquor, would be admissible, though not specially pleaded. 61 C. J. S., Motor Vehicles, 250 b. (2), § 516.

■ Ordinarily a state of intoxication is determined from the manner in which one walks or talks, or both, or from other well-known indicia of drunkenness. But one may be under the influence of intoxicating liquor and yet not show it by his speaking or walking or looks. In the final analysis, it is for a jury to say from all the facts and circumstances in evidence whether one was under the influence of intoxicating liquor at a particular time and place.

In this case we have testimony that the defendant would assume responsibility for the accident if plaintiff and her associates would "keep still about his drinking." Why would he make such a request if it were not from a sense of guilt? From this alone the

jury might well infer that defendant was under the influence of intoxicating liquor immediately prior to and at the time and place of the accident.

■ Evidence having been received as to defendant's drinking prior to the accident, the *uncorked* whiskey *bottle* with *its contents almost gone* and found in the front seat of his car, along with the "Par-T-Pak" bottle, became material evidence. Its evidentiary weight as bearing upon the issues of the case was for the jury. 61 C. J. S., Motor Vehicles, 252, § 516.

What has been said is wholly apart from defendant's own testimony as to his drinking and to the circumstances of the accident. Defendant testified that he had been to a club and to a dance in Silverton the same night and shortly before the accident. He testified as follows:

"A. Yes. I had been in George's. It is a club, I guess you would call it.

"Q. Did you have any whiskey that night?

"A. Yes, I did.

"Q. Where?

"A. At George's and at the dance.

"* * *

"Q. As you drove down the road and as you were at the turn immediately before this collision did you have any whiskey with you? [Objection overruled.]

"A. Yes, we did have whiskey.

"Q. Where was it in the car? [Objection overruled.]

"A. The whiskey was in the front seat.

"* * *

"Q. What sort of whiskey was it? [Objection overruled.]

"A. It was Roamer.

"* * *

"Q. Then you went to George's place, where you had some drinks, and then you went to the dance?

"A. That is right.

"Q. And you had more drinks there?

"A. One more. One more."

From defendant's own story as to how the accident happened a jury might also infer that his mind was clouded by the whiskey he had drunk. After rounding the curve in the road he noticed the cars on the south side and thought they were moving toward him. For all the evidence shows he never knew differently during a quarter of a mile of travel until he had passed the stopped McKay car. Though blinded by the bright lights on the McKay car so that he could not see anything in front of him on his own side of the road, nevertheless, defendant never slackened speed until too late to avoid a collision. A clear mind would suggest to one so blinded to slow down until he was able to see what was in front of him; at least, a jury might so conclude.

■■ Plaintiff also assigns as error the action of the trial court in stopping argument by plaintiff's counsel when no objection had been made by defendant. The argument follows:

"MR. CARSON: Now, I think counsel is a good American. From his past and present and future background, I think he is all right. But I think if there was ever a *communist* argument, to inflame you against this young lady, the plaintiff here, it was to say this, that the husband didn't want to get dirty, that he wanted to live in town and drive a Packard. What possible reason could he have for saying that, except to try to prejudice you against this young lady because of some imaginary wrong on the part of her husband; he doesn't want to get

dirty and he wanted to live in town. Well, some farmers do live in town, and they are good citizens. And we shouldn't insult them. But we do, if you take counsel's statement. But I submit that that is hardly a good argument in a court of law. That, members of the jury, would put you in the class of communists, which you are not—

"THE COURT: Mr. Carson, I think your remarks are out of place, to state that it is a *communist's* argument." (Italics ours.)

We agree with the trial court that the argument was improper. In the present state of the public feeling to even intimate that one is a communist, or is indulging in communistic tactics, is highly inflammatory. Though great latitude is permitted counsel in arguing a case to the jury, nevertheless, he should refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives, or from making any statements or reflections which have no place in argument, but are only calculated to cause prejudice. *Shaw v. Pacific Supply Cooperative et al.,* 166 Or. 508, 113 P. 2d 627; 64 C. J., Trial, 250, § 268, 277, § 295.

Counsel contended this argument was proper as being in reply to some improper argument made by defendant's counsel. The record does not disclose defendant's argument. But assuming that it was improper, that did not justify the argument above quoted. In 64 C. J., Trial, 281, § 300, the rule is stated:

"While the mere fact that counsel for one party has injected improper matter into the case does not license opposing counsel to commit a similar wrong, and want of good judgment or good taste or even misconduct on the part of the opposing attorney or his client will not excuse like conduct on counsel's part, yet unless it appears quite plainly that the verdict was influenced thereby; it is generally held

that improper language used in argument is not ground for reversal, where such language was provoked by the remarks of counsel for the adverse party." In other words, "two wrongs do not make a right."

■ The control of argument rests in the sound discretion of the trial court, and its action will not be disturbed on appeal unless there has been a manifest abuse of discretion, and a party has suffered injury on account thereof. *Kuehl v. Hamilton,* 136 Or. 240, 297 P. 1043.

■ The record in this case is replete with instances of sharp exchanges between counsel. One was as much at fault as the other. However, the trial court in its instructions to the jury very properly instructed:

"You should understand that nothing I say in these instructions, nor any statement, expression, or ruling made by me at any time during the trial of this case, is intended as nor should be construed by you as any intimation or suggestion of how the case is to be decided by you.

"* * *

"There has been some acrimony injected into this case by and between the respective counsel resulting from overzealousness, and I instruct you that this has no bearing whatever on the evidence and has no part in the case, and you shall disregard it entirely."

Plaintiff also assigns as error the giving of the following instruction to the jury:

"You are instructed that defendant Penner in traveling upon the Mt. Angel-Gervais highway had the right to assume that all other persons using that highway would obey the law *and he was not bound to keep a lookout for others who may violate the law.*" (Italics ours.)

This instruction was apparently taken verbatim from the case of *Schassen v. Columbia Gorge Motor Coach System*, 126 Or. 363, 270 P. 530. In that case this court in passing upon the instruction stated: "This instruction correctly states the law in this state." (Citing authorities.)

In *Johnson v. Updegrave*, 186 Or. 196, 206 P. 2d 91, this court had before it for consideration the following instruction given the jury in that case:

"A person traveling upon a highway has the right to assume *in the absence of notice to the contrary* that all other persons using that same highway will observe the law and will exercise reasonable care to avoid injury to themselves and other persons, *and he is not bound to keep a lookout for others who may violate the law.*" (Italics ours.)

It is to be noted that in substance this instruction is the same as that given in the case at bar, except that in it is included the qualification *"in the absence of notice to the contrary,"* not present in the instruction now before the court.

In discussing this instruction at page 203, Mr. Justice BRAND said:

"* * * but we do hold that the right to assume that others will obey the law does not imply the right to drive negligently into a stationary obstacle whether the obstacle be a lawful or unlawful one. *The duty of a driver to keep a reasonable lookout for obstructions on the highway is a continuing one and his duty in that respect is not lessened by the fact that a static condition of danger was created by the negligence of another.* In the case of two vehicles, both of which are being operated on the highway, it is the usual practice of the courts to instruct that neither one need assume that the other will be guilty of negligence *in the absence of notice*

*to the contrary,* but the instruction given by the court in the case at bar treats the right to indulge in this assumption as the equivalent of a right to be guilty of contributory negligence by failing to maintain the continuing duty of keeping a lookout ahead.'' (Italics ours.)

This court held the instruction to be misleading and prejudicial.

■ Defendant seeks to make a point of the fact that this court did not expressly overrule the decision in the Schassen case. However, the effect of our holding in the *Johnson v. Updegrave* case is to overrule the prior decision in the respects noted, and we now expressly do so.

■ It is a rule of law that no person need anticipate negligence on the part of any other person, and a motor vehicle operator may at all times assume *until he has notice to the contrary, or until by the exercise of due care on his part he should and would have known to the contrary,* that other persons using the highway will exercise due care and obey the law, and to act accordingly; but in no event does this right of assumption relieve him of his continuing duty to maintain such a lookout as a reasonably prudent person would maintain in the same or similar circumstances.

Inasmuch as the instruction in the case at bar contains the same vice condemned in the case of *Johnson v. Updegrave,* supra, it follows that it was reversible error for the court to give it.

The judgment is reversed and the cause remanded for a new trial.