Argued July 14, affirmed November 22, 1978

# R. J. FRANK REALTY, INC., *Respondent,*
## *v.*
# HEUVEL, *Appellant.*
## (No. 421 748, SC 25205)

586 P2d 1123

Robert L. Kirkman of Solomon, Warren, Killeen & Kirkman, Portland, argued the cause and filed briefs for appellant.

William H. Poole of Poole & Bartels, Gresham, argued the cause and filed a brief for respondent.

Before Holman, Presiding Justice, and Tongue, Bryson, and Linde, Justices.

BRYSON, J.

**BRYSON, J.**

Plaintiff real estate broker brought this action to recover a commission from defendant seller for services rendered in selling certain commercial property in Portland. The jury returned a verdict in favor of plaintiff and judgment was entered accordingly. Defendant appeals.

Defendant Heuvel and plaintiff executed a Real Estate Broker's Employment contract covering defendant's property on February 14, 1972. The asking price was $40,000. The agreement was to expire on June 1, 1972, but the expiration date was extended to July 30, 1972. An agent for plaintiff arranged with an agent for broker Dean Vincent, Inc., to cooperate on the transaction and to divide the commission if they sold the property.

Plaintiff found a prospective buyer for the property, Texaco, Inc. Plaintiff recommended to defendant that he raise the price of the property to $55,000 and defendant agreed. Plaintiff negotiated some changes in Texaco's option form contract, in defendant's behalf. The modified option provided that Texaco, not defendant, would be obligated to obtain the necessary permits and the price was set at $50,000. Texaco decided to buy the property.

The task of obtaining a permit or county approval to build a service station on the property was more difficult than the parties had anticipated. This difficulty, together with the gasoline shortage of 1973-74, led Texaco to attempt to rescind the transaction.

When defendant Heuvel learned that Texaco wanted out of its contract to purchase, he decided to sue, if necessary, to hold Texaco to its bargain. He met with Mr. Schenk, one of plaintiff's salesmen, to see what they should do. Defendant testified that Mr. Schenk told him that the transaction "was dead" and that plaintiff would not assist defendant in a lawsuit

against Texaco. However, plaintiff obtained a judgment in this case and we view the evidence most favorably for the plaintiff. Mr. Schenk testified:

"A. Well, I got ahold of Mr. Heuvel right away and we sat down and planned some strategy on seeing what we could do to keep the deal alive and go after Texaco legally in a suit for specific performance.

"Q. Now, what specifically did you do with regard to that at that time?

"A. Well, I provided Mr. Heuvel a sequenced resume of everything that had been done from the start with Texaco up to the present point in time. And having had oil company real estate background, I knew well the ingredients of a specific performance suit."

The record shows that Mr. Schenk, plaintiff's salesman, prepared notes for the defendant and gave his deposition in defendant's suit against Texaco and generally assisted the defendant. Thereafter, defendant brought suit against Texaco in March, 1974, and invited plaintiff to share the costs of the suit. Plaintiff declined, but told defendant that plaintiff would expect a commission if the suit was successful.

The suit was eventually settled and Texaco agreed to buy the property for $45,000, the reduction in price being partly due to the condemnation of part of the property for street widening. Defendant refused to pay plaintiff its commission and plaintiff brought this action. Defendant's appeal raises nine assignments of error.

Defendant first contends that the trial court erred in refusing defendant's motion to strike certain testimony. Plaintiff's attorney was questioning John Schenk, a real estate broker and one of plaintiff's licensed real estate salesmen, about a meeting he had had with the defendant:

"Q. And what was that meeting about?

"A. Just more or less planning strategy on the specific performance case.

"Q. Was there a discussion about your testimony?

"A. Yes.

"Q. Was anything in any of these conversations ever said about you not still being in the picture and not being entitled to a commission?

"A. Absolutely not.

"Q. Were they soliciting your cooperation at that time?

"A. Yes, they were.

"[Defendant's attorney]: Objection. That calls for an opinion, Your Honor.

"THE COURT: Yes. Just have him state what was said.

"[Defendant's attorney]: I would move to have the witness' answer stricken also.

"THE COURT: I'll let it stand."

After the court's ruling Schenk testified as to the facts regarding his meeting with defendant, the notes he prepared for defendant, and his giving his deposition.

■ Defendant argues that the testimony was objectionable as being an opinion on the issue of whether the time on the listing agreement had been extended. We do not view the question and answer as eliciting opinion evidence. Moreover, after the court's ruling the witness testified to the facts. The determination of whether to permit such testimony should be left to the discretion of the trial court. McCormick, Evidence 25-26, § 11 (2d ed 1972). It is within the trial court's discretion to proceed as the trial court did in this case. That is, admonish the attorney to ask for specific facts and yet let the original answer stand. We hold that the trial court did not abuse its discretion in denying the motion to strike.

Defendant next argues that the trial court erred in refusing to grant defendant's motion to limit plaintiff's recovery to half of the 10 percent commission. Defendant asserted at trial that Dean Vincent was entitled to the other half of the commission, pursuant to its agreement with *plaintiff,* if any commission was due; therefore, according to defendant, plaintiff could recover, at most, just half of the commission.

[ 305 ]

■ We note that defendant does not assert that Dean Vincent should be made a party to the case in order to prevent double liability against defendant. Instead, defendant attempts to use Dean Vincent's contract with plaintiff to limit plaintiff's recovery under its contract with defendant. However, the contract *between plaintiff and defendant* does not provide that plaintiff shall recover a smaller commission if it makes a contract to divide the commission with another realtor and there is no written contract between defendant and Dean Vincent, Inc. Therefore, plaintiff's possible obligation to share its commission with Dean Vincent was not relevant to this case, and the trial court did not err in denying the motion.

Defendant's third assignment of error concerns plaintiff's closing argument:

"* * * [Plaintiff's attorney]: Now then, why does this become important? It becomes important on this question that I pointed out to you of good faith. Mr. Warren [a witness] doesn't tell us about this. In fact, he completely circumvents it, in my opinion, intentionally misleads—

"[Defendant's attorney]: I'm going to object to that, Your Honor. I think that's a misstatement. There is no evidence to support that.

"THE COURT: This is argument. Go ahead."

■■ Of course, counsel's opinion is not based on evidence, and such statements are not condoned. Although counsel should refrain from abusive arguments, control of jury argument is "left largely to the discretion of the trial court, subject to reversal only for an abuse of that discretion." *Amick v. Watson,* 280 Or 641, 645, 572 P2d 317 (1977). *See also Plourd v. Southern Pac. Transp. Co.,* 272 Or 35, 534 P2d 965 (1975); *Walker v. Penner,* 190 Or 542, 554, 227 P2d 316 (1951). We conclude that the trial court did not abuse its discretion.

Defendant's fourth and fifth assignments of error are that the trial court erred in refusing to give the following requested instructions:

"You are instructed that the broker is not entitled to compensation for merely procuring a prospective purchaser to take an option to purchase. Broker's right to compensation accrues when the optionee subsequently exercises the option, or is willing and able to exercise it, but is prevented from doing so by some act or omission on the part of the owner to comply with his part of the agreement.

"You are instructed that where a customer procured by a broker fails or refuses to comply with a contract of purchase, and the broker's commission is contingent upon the performance by the customer, the owner is under no duty to enforce the contract so that the broker can earn his commission."

■■ Plaintiff's response to these assignments of error is that even though the requested instructions may be correct statements of the law, they are not relevant to this case. We agree. An instruction is faulty and need not be given if, although technically correct, it "has no relation to the issues raised by the pleadings and proof * * *." *Boyle v. Cottrell,* 222 Or 565, 573, 353 P2d 838 (1960). *See also Able v. Cone,* 268 Or 339, 342, 520 P2d 899 (1974). The first requested instruction is faulty in part because it raises the irrelevant issue of the owner's failure to comply with the agreement, which did not happen in this case. The instruction could confuse and mislead the jury into thinking that since the owner did not breach the agreement the broker must not be allowed to recover. The court did not err in refusing to give the instruction.

■ The second requested instruction is also irrelevant. Whether an owner has such a duty as described in the instruction is irrelevant because the owner in this case did in fact enforce the contract. The issue at trial was whether under such facts the broker is entitled to a commission. Therefore, the requested instruction was properly refused as irrelevant. Moreover, we have reviewed the instructions as given by the trial judge and are satisfied that they adequately presented the law applicable to the issues in the case.

[ 307 ]

Defendant's sixth assignment of error has to do with the trial court's following discussion with the jury in the presence of counsel:

"A JUROR: And what gets to me here is if the buyer backed out. And that's where all the trouble started, and that's my confusion.

"THE COURT: Let me give you some examples and maybe the examples will be somewhat helpful to you.

"If a broker finds a buyer and they enter into a contract, a firm contract that was enforceable and the buyer backs out and the deal is never consummated, then the broker is not entitled to a commission because the deal was never consummated, even though there was an enforceable agreement.

"You have the situation where I think you have to distinguish between that situation and the case where a buyer suddenly becomes reluctant. Perhaps he gets second thoughts and he doesn't perform as normally would be expected. Then you have a question of fact. Did the buyer actually back out or was the deal that was originally made finally consummated?

"Now, if it's the same deal, even though there was some interruption, the deal that the broker put together and the parties all agreed to, even though it was delayed, was consummated. Under those circumstances, the broker would be entitled to a commission.

"In this case, talking about the precise facts in this case, you have a situation where the buyer indicated an unwillingness to proceed with the contract. Texaco says the deal was off. There was an interruption because Texaco was not going to go through with it. The seller in this case filed a lawsuit to enforce what he felt was an enforceable contract, and ultimately the sale was made to Texaco. Albeit, on slightly different terms.

"The question that you have to decide is whether or not it was a different transaction that ultimately was made by Texaco and the Defendant in this lawsuit, or whether it was the same transaction delayed without the termination of the employment contract with the broker, or the abandonment of that relationship by the broker."

Defendant excepted to this discussion on two grounds: That it was an improper comment on the

evidence and that it was in effect a directed verdict for the plaintiff.

ORS 17.255(1) restricts the trial judge's power to instruct the jury on the evidence of the case and provides:

> "(1) In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact."

An instruction is a comment on the evidence and forbidden by ORS 17.255(1) only where it instructs the jury on the probative value of the evidence. *Cox v. Gustafson,* 261 Or 159, 162, 493 P2d 52 (1972); *Franks v. Smith,* 251 Or 98, 103-04, 444 P2d 954 (1968); *Hanson v. Schrick,* 160 Or 397, 403, 85 P2d 355 (1939). The only statement made by the court that might fall within the proscription was the following paragraph:

> "In this case, talking about the precise facts in this case, you have a situation where the buyer indicated an unwillingness to proceed with the contract. Texaco was not going to go through with it. The seller in this case filed a lawsuit to enforce what he felt was an enforceable contract, and ultimately the sale was made to Texaco. Albeit, on slightly different terms."

These statements, although statements of facts, are statements of undisputed facts. Such statements are not error. *Ore. Motor Stages v. Portl'd Traction Co.,* 198 Or 16, 24-25, 255 P2d 558 (1953); *State v. Watson,* 47 Or 543, 545, 85 P 336 (1906). The last sentence of the above instruction is a comment on the evidence because it tells the jury that the final contract was slightly different from the one negotiated by the plaintiff. Immediately after stating the final contract was slightly different, the trial court told the jury that its task was to determine "whether or not it was a different transaction * * *." From this, the jury was left to determine whether the differences between the two contracts, based on all the facts, were sufficient to

make the final transaction a different one. In other words, the court left the issue for the jury.

Defendant also argues that the statement to the jury was objectionable because it told the jury "that the question they have to decide, and the *only* question they have to decide, is whether or not the settlement of the Heuvel v. Texaco litigation [and sale] was the same or a different transaction * * *. The practical effect of this statement [is that it] * * * told the jury that they did not have to decide the other issues raised by the Defendant * * *." (Emphasis supplied.) The trial judge did *not* tell the jury that the only question they had to decide was whether the final transaction was the same as the one arranged by the plaintiff. The world "only" was inserted by defendant. The jury could not reasonably have interpreted the instruction to mean that they should disregard the other issues. We find no error in this assignment.

Defendant's seventh assignment of error is that the trial court gave an incomplete reinstruction in response to a jury question as follows:

> "A JUROR: Did you say as long as negotiations are continuing on under a given contract the terms of the contract are still in force even though the contract may have been terminated originally in that their original terms as long as the process they are still bargaining for is still considered a binding contract?
>
> "THE COURT: I'll read the part of that instruction again.
>
> "If you find the listing agreement was extended by the Defendant, after the expiration date and the Plaintiff continued his efforts with the knowledge and approval of the Defendant, then any termination of the listing agreement by the Defendant would be effective only if made in good faith.
>
> "The Defendant cannot terminate the contract solely to avoid liability for the broker's commission while he continues to negotiate with a prospective purchaser procured by the broker."

Defendant contends that the reinstruction was objectionable because it told the jury what to do if it found that the listing agreement had been extended, without telling them what to consider in deciding whether the agreement had been extended. The court had earlier given instructions on what was necessary to extend the contract. We are not aware of any authority, and defendant cites none, that requires a trial judge to tell the jury more than it wants to know on reinstruction. On the contrary, the statute on reinstruction, ORS 17.325, states:

> "After the jury have retired for deliberation, if they desire to be informed of any point of law arising in the case, they may require the officer having them in charge to conduct them into court. Upon their being brought into court, *the information required* shall be given in the presence of, or after notice to the parties or their attorneys." (Emphasis supplied.)

In *State v. Flett,* 234 Or 124, 129, 380 P2d 634 (1963), we stated, "The advisability of reinstructing rests within the discretion of the trial court, subject to the statute." The trial court did not abuse its discretion in refusing to expand on the reinstruction.

Defendant's last two assignments of error contend that the verdict was not supported by the evidence. However, this was a jury trial and such a contention can only be preserved for appeal by a motion for a directed verdict during trial. *See, e.g., Columbia Truck Sales, Inc. v. Humphrey,* 281 Or 705, 707, 576 P2d 373 (1978), and cases therein cited. Defendant did not move for a directed verdict and therefore we do not consider these assignments of error.

Defendant argues that we should reconsider our rule requiring a motion for a directed verdict because we recently, in *Maulding v. Clackamas County,* 278 Or 359, 563 P2d 731 (1977), changed the law as to grounds for a *new trial.* Even if we were to apply *Maulding* prospectively, it would not aid defendant. The *new trial* rules are different from the *sufficiency of evidence* rules. We point out that the rule requiring

[ 311 ]

a motion for a directed verdict at trial in order to preserve the "sufficiency of evidence" objection for appeal has been the law since *Davis v. Emmons,* 32 Or 389, 395, 51 P 652 (1898).

Affirmed.