Argued and submitted June 19, 2000, reversed and remanded February 7, 2001

## ATLAS COPCO INDUSTRIAL COMPRESSORS, INC.,
*Appellant,*

*v.*

## KARN REPAIR SERVICE, INC.,
an Oregon corporation
and Karn Equipment, Inc.,
a Washington corporation,
*Respondents.*

(9802-01323; CA A107073)

18 P3d 1102

Bruce L. Campbell argued the cause for appellant. With him on the briefs was Miller Nash LLP.

Roger K. Stroup argued the cause for respondents. With him on the brief was Bodyfelt Mount Stroup & Chamberlain.

Before Linder, Presiding Judge, and Brewer, Judge, and Ceniceros, Senior Judge.

LINDER, P. J.

## LINDER, P. J.

Plaintiff Atlas Copco Industrial Compressors, Inc. (Atlas Copco) initiated a breach of contract action against defendants Karn Repair Service, Inc., and Karn Equipment, Inc. (Karn), which were distributors of its products. The gravamen of Atlas Copco's claim was that Karn failed to make payments on account balances owing for products supplied to it by Atlas Copco. Karn counterclaimed for breach of contract, for fraudulent representation, and for a setoff and recoupment based on Atlas Copco's alleged failure to assign to Karn the account of a particular customer, Intalco Aluminum (Intalco). In an unreported pretrial conference in the trial judge's chambers, the parties agreed to try Atlas Copco's claim to the court and Karn's counterclaim to a jury. Karn's counterclaim was tried first, and the jury returned a verdict for Karn in the amount of $1,010,107. Atlas Copco appeals, arguing that the trial court abused its discretion by granting Karn's motion to limit Atlas Copco's closing argument and by denying Atlas Copco's motion for a new trial. We agree that the trial court's limitation on Atlas Copco's closing argument was error. We therefore reverse and remand for a new trial without reaching Atlas Copco's second assignment of error.

In the dispositive assignment of error, Atlas Copco argues that, by granting Karn's motion to limit closing argument, the trial court deprived it of the opportunity to make a "legitimate argument" based on certain "undisputed evidence." Specifically, Atlas Copco wanted to cast doubt on the credibility of Karn's counterclaim by pointing out to the jury that Karn never asserted that Atlas Copco owed Karn money for the Intalco account until Atlas Copco filed the action against Karn to collect overdue account balances. Atlas Copco argues that it was prejudiced by its inability to make that argument, because it was prevented from effectively and completely arguing the theory of its defense against Karn's counterclaim—that is, that the timing of Karn's assertion of the counterclaim was a basis for viewing that claim "with suspicion." Atlas Copco also asserts that Karn waived any objection to the precluded argument by not objecting to similar statements in Atlas Copco's opening statement to the jury.

In response, Karn makes a series of related contentions. First, Karn argues that Atlas Copco mischaracterizes the trial court's ruling. According to Karn, its motion and the court's ruling limiting closing argument applied only to the *amount* that Karn owed to Atlas Copco, which Karn asserts was proper because the amount was to be determined by the trial court in a later proceeding. Karn maintains that, because the trial court's ruling was not as broad as Atlas Copco suggests, Atlas Copco was not actually precluded from making the argument it wanted to make. Karn also argues that, even if the trial court erred, any error was harmless. Karn asserts that, notwithstanding whatever limitation the trial court ordered, Atlas Copco in fact proceeded to make the closing argument that it now claims it was precluded from making and the jury was able to fully consider it. Finally, Karn argues that, in all events, the trial court properly exercised its discretion to limit Atlas Copco's closing argument.

The relevant facts are procedural in nature. The record shows that, in their opening statements, counsel for both Karn and Atlas Copco acknowledged to the jury that Karn owed Atlas Copco money on past due accounts. They further advised the jury that the amount of the money owed on those accounts would be determined later by the court. Atlas Copco's counsel also explained:

> "So that's—that's the economics on how the case will—how your decision will impact these numbers here. This is what happened when Atlas canceled—*when they brought this action to collect this sum, and [Karn] had (inaudible) what they called a counterclaim and said, 'You know, we might owe you that money, but you owe us more money.'*"

(Emphasis added.)

The testimonial and documentary evidence that the parties presented at trial need not be described in detail. Suffice it to say that there was ample and undisputed evidence that, as of 1991, Karn's accounts with Atlas Copco were delinquent; that Karn executed a promissory note in 1991 and took other actions acknowledging the delinquency; that Karn paid some or all of the balances due on that 1991 promissory note; that Atlas Copco offset some of Karn's debt with its profits from sales to Intalco; but that, as of 1997 and continuing

through the time of trial, Karn continued to have significant overdue account balances with Atlas Copco. In other words, the jury was well aware from the evidence that Karn owed Atlas Copco money on its accounts, although the jury did not know the exact amount of that debt. Beyond that, the evidence focused largely on Karn's counterclaims relating to its allegations that Atlas Copco had promised and failed to assign to Karn the Intalco account and the possible harm to Karn as a result. As already noted, the jury found for Karn on its counterclaim relating to Atlas Copco's failure to assign the Intalco account to it and awarded Karn $1,010,107 in damages.

■ We first consider whether, as Karn argues, the trial court did not in fact preclude reference to its overdue account balances owed to Atlas Copco, but rather precluded Atlas Copco only from referring to the *amount* owed. The record shows that, in making its oral motion to limit argument, Karn initially asked the court to exclude reference only to "the amount of the balances." Atlas Copco objected, arguing that its theory of defense was that the Intalco account counterclaim was "a side issue" that Karn had raised only to offset Karn's considerable debt to Atlas Copco.[1] In response, Karn's counsel stated that it would be "improper for [Atlas Copco's counsel] to *talk about that and talk about the numbers.*" (Emphasis added.) Whatever the original scope of Karn's motion to exclude, as the arguments progressed, the motion seemed to evolve to encompass any reference to either the existence or the amount of the overdue balance owed by it to Atlas Copco. Ultimately, the trial court appears to have so understood it, and to have agreed that the limitation on Atlas Copco's argument should be that broad. In ruling on the motion, the court stated in part, "I'm not going to let you

---

[1] Specifically, counsel argued:

"What the jury needs to hear—I made the starting point as we sold hard goods to Karn and have not been paid for them to the extent of [$430,000] to $475,000. That's to start.

"We performed the distributorship agreement by supplying parts. They need to know that. *They need to know that we — this Intalco is a side issue that was brought up to offset what was owed by — what was owed by Karn*, and I think it's important to the argument."

(Emphasis added.)

argue that Karn owed money on the account" and advised counsel for Atlas Copco that the only issue to be argued by the parties was whether Atlas Copco breached an agreement to assign the Intalco account to Karn. We agree with Atlas Copco that the trial court's ruling effectively precluded it from referring to either the existence or the amount of the overdue account balances.[2]

We next consider whether, as Karn argues, Atlas Copco nevertheless made the argument that it now claims it was precluded from making, rendering any error in the ruling harmless. In Karn's closing argument, counsel argued that the case was about Atlas Copco's "broken promise" to assign the Intalco account to Karn and, because there was evidence of the promise and Atlas Copco's breach of it, "the question really is" the amount of Karn's damages. Karn's counsel also argued that Karn was in arrears in 1991 and that it signed a promissory note at that time because of Atlas Copco's failure to assign the Intalco account; he argued, "If they had never broken their promise, we wouldn't have a note. We wouldn't be in *this position*." (Emphasis added.) Counsel asked the jury to "put [Karn] in the position it would have been" if it had been assigned the Intalco account during the relevant time period.

In Atlas Copco's closing argument, counsel argued that Atlas Copco had applied profits from the Intalco account to the 1991 promissory note and that, when the parties corresponded in 1997 regarding the then-existing overdue balances, Karn did not mention the Intalco account. Atlas Copco's counsel urged:

> "It's just hard for me to believe that an issue that is now just the sole reason that [Karn is] seeking money wasn't raised in the letter about the status of this account. This just doesn't make any sense.

---

[2] Any doubt about the scope of the trial court's limitation on Atlas Copco's closing argument is eliminated by the discussions that took place in connection with Atlas Copco's motion for new trial. Atlas Copco again urged that it had been deprived of an ability to refer to the debt existing at the time of trial and the timing of Karn's assertion of the counterclaim, thus precluding it from commenting on evidence that might draw the credibility of the counterclaim into doubt. Neither Karn's counsel nor the trial court took issue with Atlas Copco's understanding of the scope of the trial court's prior ruling.

"* * * * *

"* * * And if [the Intalco account] is so important, why didn't [Karn] write one piece of correspondence to anybody — to anybody about this problem?

"* * * * *

"* * * Why would [Karn] wait? Why would [Karn] wait so long?"

Thus, counsel for Atlas Copco asked the jury why Karn "waited so long" to raise its claim to the Intalco account. But Atlas Copco, apparently feeling constrained by the trial court's ruling, did not provide the jury with its answer to that question—that is, that Karn was exaggerating the existence or worth of the Intalco claim merely to avoid, through an off-set, paying the substantial amount that it owed to Atlas Copco.

On the basis of that record, we agree that Atlas Copco's argument raised a *question* as to why Karn was asserting its counterclaim.[3] But Atlas Copco's closing argument made no reference to either the existence or the amount of the then-existing overdue account balances. Thus, counsel never *answered* the rhetorical question he placed before the jury as to why Karn was now seeking damages relating to the Intalco account. Consequently, we conclude that Atlas Copco did not in fact make the argument that it contends it was precluded from making, namely, that Karn asserted its counterclaim relating to the Intalco account only in response to Atlas Copco's efforts to collect Karn's current overdue account balances, and that the counterclaim therefore should be "viewed with suspicion."

 We turn, finally, to the question whether the trial court's ruling precluding the argument was error and, if so, whether the error was prejudicial. Control of jury argument is left largely to the discretion of the trial court. *R.J. Frank*

---

[3] We also note that, apparently due to the parties' understanding (shared by us) that the trial court's ruling applied only to the then-current overdue account balances and not to the balances that were the subject of the 1991 promissory note, both parties freely referred to that note, the amounts due under it, and the history of payment of those amounts. What they did not refer to in closing argument was the existence of any debt at the time of trial.

*Realty v. Heuvel*, 284 Or 301, 306, 586 P2d 1123 (1978). The court has discretion both as to allowing argument and as to precluding argument. For example, the court may preclude argument that instructs the jury on the law. *See Davis v. Pacific Diesel*, 41 Or App 597, 608, 598 P2d 1228 (1980) (trial court did not abuse its discretion in "curtailing" counsel's jury argument relating to the meaning of "preponderance of the evidence" and the law of "concurrent causation"). The court also may preclude argument that is "inflammatory" or otherwise improper. *See Highway Commission v. Callahan*, 242 Or 551, 558, 410 P2d 818 (1966) ("justice demands that arguments be factual and not inflammatory"); *Walker v. Penner*, 190 Or 542, 227 P2d 316 (1951) (trial court properly precluded counsel from making a "highly inflammatory" argument to the effect that opposing counsel's argument was "a communist's argument").

Conversely, jury argument properly may include reference to matters that are "within the bounds of the issues and evidence" in the case. *See Myers v. Cessna Aircraft*, 275 Or 501, 529, 553 P2d 355 (1976); *see also State v. Simonsen*, 329 Or 288, 298, 986 P2d 566 (1999), *cert den* 528 US 1090 (2000) (where the challenged statements in the state's closing argument contained information that the state had introduced as evidence, the defendant "failed to demonstrate how those statements, which referred to evidence already before the jury, resulted in prejudice"); *State v. Bolger*, 31 Or App 565, 568, 570 P2d 1018 (1977) ("Counsel during argument is permitted to comment on the evidence and to draw all legitimate inferences therefrom[.]"). Thus, as to evidentiary matters, a trial court can abuse its discretion either by allowing jury argument regarding facts that are not in evidence, *Kuehl v. Hamilton*, 136 Or 240, 244, 297 P 1043 (1931), or by refusing to allow argument regarding facts that are in evidence. *See Hammons v. Schrunk*, 209 Or 127, 139, 305 P2d 405 (1956) (explaining that a trial court will abuse its discretion if it "den[ies] a party his right to present the material issues of his cause to the jury"); *see also Ireland v. Mitchell*, 226 Or 286, 295, 359 P2d 894 (1961) (the purpose of closing argument is "to persuade the jury to adopt a particular view of the facts"). Where the trial court has abused its discretion, this

court will reverse if the error was prejudicial. *Nord v. Wetmore*, 105 Or App 246, 250, 804 P2d 501 (1991). *See also* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party.").

■ As discussed above, documentary evidence in the record established that Karn currently owed money to Atlas Copco for products supplied to it by the latter and that Atlas Copco had attempted to collect that debt. In addition, witnesses for both parties testified about Karn's then-existing overdue account balances. For present purposes, we are willing to assume that the trial court properly could preclude Atlas Copco from referring in its closing argument to the *amount* of Karn's overdue account balances, given that the precise amount in question was to be determined by the court in a later proceeding. But Atlas Copco should not have been similarly limited in referring to the very *existence* of the overdue accounts and its efforts to collect them. Atlas Copco's theory was a simple one: That Karn was asserting a claim relating to the Intalco account only to offset Karn's debt to Atlas Copco and was exaggerating the value of the account accordingly. That theory ran to Karn's credibility in making the counterclaim and the weight to be given to Karn's evidence as to the worth of that claim; it therefore was fundamental to Atlas Copco's defense. To be sure, it was for the jury to decide whether Karn's evidence in support of the existence and worth of the counterclaim should be believed. But the jury should not have been left to decide that question without the benefit of Atlas Copco's argument as to what inferences the evidence supported on that point.

We conclude that it was an abuse of discretion under those circumstances for the trial court to limit Atlas Copco's ability to comment on matters in evidence and to make legitimate arguments as to the weight and believability of the evidence. Accordingly, the trial court ruling was error. Moreover, we agree with Atlas Copco that it was prejudiced by the court's ruling, because that ruling prevented Atlas Copco from effectively and completely presenting to the jury the theory of its defense against Karn's counterclaim relating to Atlas Copco's failure to assign the Intalco account to Karn.

Reversed and remanded.