Argued and submitted January 4, affirmed September 3, 2008, petition for review allowed January 13, 2009 (345 Or 618)

Alan CLER
and Debi Cler,
*Plaintiffs-Appellants,*

*v.*

PROVIDENCE HEALTH SYSTEM-OREGON,
dba Providence St. Vincent Medical,
*Defendants,*

*and*

OREGON HEMATOLOGY ONCOLOGY
ASSOCIATES, PC,
*Defendant-Respondent.*

Multnomah County Circuit Court
040100189; A130443

192 P3d 838

Stephen C. Hendricks argued the cause for appellants. With him on the opening brief was Kathryn H. Clarke. On the reply brief was Kathryn H. Clarke.

Janet M. Schroer argued the cause for respondent. With her on the brief were Marjorie A. Speirs and Hoffman, Hart & Wagner, LLP.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

■        In this nursing negligence case, plaintiffs Alan and Debi Cler[1] appeal after a jury verdict for defendant Oregon Hematology Oncology Associates, PC (Oregon Hematology).[2] Plaintiffs contend that the trial court abused its discretion when it allowed defense counsel during closing argument to present facts to the jury that were not in the record. We review a trial court's ruling regarding the permissibility of jury argument for an abuse of discretion and reverse only if any error is found to be prejudicial. *Atlas Copco Industrial v. Karn Repair Service*, 172 Or App 317, 323-25, 18 P3d 1102 (2001). We affirm because plaintiffs have not shown that any improper jury argument was prejudicial.

We state the facts in the light most favorable to defendant. *See Miller v. C. C. Meisel Co., Inc.*, 183 Or App 148, 150, 51 P3d 650 (2002) (explaining that this court states the facts "in the light most favorable to the party in whose favor the jury returned a verdict"). In April 2002, Alan Cler was diagnosed with Hodgkin's lymphoma, a form of cancer. After consultation with his physician, Cler chose to undergo a chemotherapy treatment that required the periodic intravenous injection of four different drugs. One of those drugs was Adriamycin, a vesciant that can cause severe tissue damage if it leaks out of a vein while being administered.

On June 3, 2002, Cler reported to Oregon Hematology for his first chemotherapy session. An oncology nurse and employee of Oregon Hematology was assigned to administer Cler's chemotherapy. An Adriamycin leak occurred during the chemotherapy session and caused severe damage to Cler's arm and hand. As a result, the Clers filed an action against Oregon Hematology for personal injury and nursing negligence, alleging that the nurse's treatment fell below the standard of care for an oncology nurse. Plaintiffs' claims were tried to a jury.

---

[1] All references to "Cler" in this opinion refer to Alan Cler.

[2] Defendant Providence Health System-Oregon is not a party to this appeal. All references to "defendant" refer only to defendant Oregon Hematology Oncology Associates, PC.

During her opening statement at trial, defense counsel told the jury that she would be calling an oncology nurse to testify as an expert witness. She stated:

"You are going to hear from a number of experts in this case. We're going to bring three medical experts to you: * * * an oncology nurse, nurse manager at OHSU; [and two] oncologists."

Counsel went on to explain what she expected the substance of the nurse expert's testimony to be. Apparently, because of scheduling difficulties, the nurse expert was never called to testify. Plaintiffs' counsel was aware of the problems in scheduling that witness.

Nonetheless, in closing argument to the jury, plaintiffs' counsel questioned the reason that the defense had failed to call the nurse expert. He argued:

"Can you imagine this institution, Oregon Hematology Oncology, and they have not called an independent nurse expert to justify the care in this case?

"I mean, can you imagine? Now, there's a reason. It is probably because they couldn't get a nurse expert who would say that this was okay care. That's the conclusion that's easy to draw on.

"* * * * *

"Remember, we're supposed to decide cases on the evidence and the evidence alone. So I submit to you that if they had a chance to bring together, bring more information to you, that they did not. If they are making assertions that they do not follow through on, that tells you something about who really is telling you what is going on in the case."

Defense counsel then sought to respond to that argument regarding the nurse expert. The following colloquy occurred during defense counsel's jury argument:

"[DEFENSE COUNSEL]:   Now, one thing I just want to mention before I forget, [plaintiffs' counsel] said that we didn't even call an oncology nurse. And I hope you remember that when I started my case, and I gave my opening statement, I told you that I had [two oncologists] and [an oncology nurse] who is the nurse manager at OHSU and

has 20 years' of experience in oncology. I hope you remember that—

"[PLAINTIFFS' COUNSEL]: Your Honor, I hope counsel is not going to go someplace where she's testifying as opposed to addressing the evidence that was before the court.

"[THE COURT]: I'm going to let her continue * * * in the same vein that you addressed the evidence.

"[DEFENSE COUNSEL]: I hope you'll remember that on Wednesday afternoon, there were two witnesses in the courtroom: [a doctor] who came back yesterday.

"[PLAINTIFFS' COUNSEL]: Your Honor, respectfully, this is improper. I object to this argument.

"[THE COURT]: Your objection is overruled.

"[DEFENSE COUNSEL]: [The oncology nurse] and [the doctor] were sitting in the courtroom. They were there from 1:30 after we came back from lunch until almost the end of the day—

"[PLAINTIFFS' COUNSEL]: Your Honor—

"[DEFENSE COUNSEL]: —waiting to testify.

"[PLAINTIFFS' COUNSEL]: Your Honor, I'm sorry. There's no evidence before the court that [the oncology nurse] was sitting in the courtroom waiting to testify, and I object to this. This is outside the scope of the evidence.

"[THE COURT]: Let me see counsel in chambers, please.

"(Off-the-record conversation)

"[THE COURT]: We're ready to start again. Thank you.

"[DEFENSE COUNSEL]: Thank you.

"[The oncology nurse] was here on Wednesday, prepared to testify in the afternoon. She sat in the courtroom all afternoon, and she didn't get on because [plaintiffs' counsel] was calling Mr. Cler in the afternoon. She had to leave on the following day. She got on a plane. She was scheduled to go on vacation. That's why you didn't hear from [the oncology nurse]. She was prepared to be here. She sat in the courtroom all that afternoon, and again, she was

prepared to testify and would have testified in our case and supported our case."

Thereafter, in his rebuttal argument, plaintiffs' counsel stated:

"You heard me object to the thing about the nurse expert. I feel pretty strongly about this. Look, anybody that tries these cases knows that you better get your most important and your best witness on.

"Now, you guys sat through the testimony and you knew that we accommodated [defense counsel] by taking two witnesses out of turn. She had every, every opportunity to get a nurse expert in to testify in this case. If she didn't want to call that nurse at some particular time, there's another procedure that's available.

"You can take a witness outside the bounds of the courtroom and you can do a videotape deposition and set up a camera and bring it in. You saw—I don't know if you saw there's a television in the courtroom for a couple of days. So you can play perpetuated testimony on a TV.

"She had every opportunity under the rules that we do these cases to get this witness in here, and she did not. So I think that you still have to conclude there's a reason that she did not."

At the close of trial, the jury returned a verdict for defendant. Plaintiffs then filed a motion for a new trial on the grounds, among other things, that defense counsel's closing argument was improper. Plaintiffs argued that the trial court abused its discretion when it permitted defense counsel to make an argument to the jury based on facts not in evidence. The trial court denied that motion for a number of reasons, including the lack of substantial prejudice to defendant:

"Even assuming that plaintiffs had timely objected to all of the facts not in evidence during defense counsel's closing argument, the Court's failure to sustain those objections did not substantially affect plaintiffs' rights. The 'facts' defense counsel mentioned were not probative of the substantive factual issues in the case, nor did they raise an issue with respect to the credibility of a witness. * * * Consequently, the facts asserted were collateral to the evidence on liability issues * * *.

"Finally, the Court notes that plaintiffs' counsel was able to effectively rebut defendant's reasons why it did not call an oncology nurse expert, by explaining ways in which defendant could have preserved the expert's testimony for trial and by suggesting that defense counsel made choices regarding the order in which she called her experts. Given the totality of the circumstances, the Court does not find that plaintiffs have met their burden of showing that they were substantially prejudiced by defense counsel's closing argument to the jury. Plaintiffs' motion for new trial is denied on this ground."

Plaintiffs assign error to the trial court's ruling regarding defense counsel's closing argument and to its denial of plaintiffs' motion for a new trial. The denial of a motion for a new trial based on the trial court's earlier rulings is not reviewable on appeal. ORS 19.205(3); *see also Martin Engineering v. Opton*, 277 Or 291, 295, 560 P2d 617 (1977) ("The denial of this motion for a new trial cannot be assigned as error on appeal. As a matter of substance, such a ruling is not an appealable order."). We confine our review, then, to the trial court's rulings on defense counsel's closing argument as explained in its denial of plaintiffs' motion for a new trial.

On appeal, plaintiffs present much of the same argument that they made below: (1) that the trial court abused its discretion in allowing improper argument by defense counsel; and (2) that they were prejudiced because defendant's failure to rebut testimony by plaintiffs' expert nurses with its own expert nurse witness was telling in an otherwise close case. In response, defendant contends that the argument was not improper and that, even if it were improper, allowing that argument did not substantially affect plaintiffs' rights and was not prejudicial. We agree with plaintiffs that the trial court abused its discretion in allowing the improper argument. As we held in *Rieker v. Kaiser Foundation Hospitals*, 194 Or App 708, 712, 96 P3d 833 (2004), "[j]ury argument properly may include reference to matters that are within the scope of the issues and evidence, but evidence outside the record may not be suggested to the jury by any means. OEC 103(3)."[3] We conclude, however, that any error in allowing

---

[3] Generally speaking, evidence outside the record may not be suggested to the jury by any means. OEC 103(3) provides that, "[i]n jury cases, proceedings shall be

defense counsel's statements to the jury did not substantially affect plaintiffs' rights and, therefore, was not prejudicial.

■■■ Regulation of jury argument is left to the discretion of the trial court. *Id.* If a trial court abuses its discretion in allowing improper jury argument, that error "is not reversible, however, unless the losing party demonstrates that the error substantially affected his or her rights." *Id.* (citations omitted); *see also* ORS 19.415(2) ("No judgment shall be reversed * * * except for error substantially affecting the rights of a party."). As the Supreme Court stated in *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 173, 61 P3d 928 (2003),

> "an error 'affecting' a party's rights is an error that can be said to '*produce* a material influence' or 'to *have* a detrimental influence' on those rights, and not merely one that 'might' have changed the outcome of the case. The use of the adverb 'substantially' further limits the type of error that can result in reversal of a judgment. 'Substantially' means 'in a substantial manner,' and the relevant definition of 'substantial' is 'being of moment: IMPORTANT, ESSENTIAL.' "

(Emphasis and uppercase in original.) Based on the above, the court concluded that "reversal of a judgment is the exception, not the rule." *Id.*

■ The presentation of extra-record evidence on difficulties in scheduling the testimony of a nurse witness favorable to defendant, however, did not substantially affect plaintiffs' jury trial right for three reasons.[4] First, the trial court provided instruction to the jury, before and during trial, that opening and closing statements are not evidence. The court

---

conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

[4] To whatever extent plaintiffs claim a right to present jury argument on inferences to be drawn from an absent witness, that right was not substantially affected by defense counsel's reference to facts outside the record. Plaintiffs' jury arguments were fully made and were not censored by the trial court. Plaintiffs rebutted defense counsel's closing argument by proffering ways in which the defense could have brought the nurse expert to testify despite any scheduling difficulties. Plaintiffs' counsel was also able to reiterate his initial argument that it was reasonable for the jury to infer that there was a reason defendant did not call the nurse expert to testify: a reason plaintiffs' counsel attributed to the substance of the expert's testimony. Plaintiffs' right, then, to present that particular argument to the jury was not substantially affected by the court's ruling on defense counsel's argument.

emphasized to the jury that opening statements and closing arguments "are simply intended to help you understand the evidence and the application of the law to that evidence" and "[y]ou and you alone are to decide the facts. You must decide how believable the evidence is and what weight or value you will give to that evidence." Those instructions would have helped to cure any impropriety in closing argument by ensuring that the jury did not take defense counsel's statements as evidence in the case. The jury is presumed to have followed the trial court's instructions. *DeLong v. Yu Enterprises, Inc.*, 334 Or 166, 174, 47 P3d 8 (2002).

Second, whatever the strength or weakness of plaintiffs' inference, it was not even a forkful of the entire evidentiary pie. Both sides presented expert testimony in a week-long trial. Some of the testimony by plaintiffs' witnesses was favorable to defendant. There was testimony from both sides that a leakage could occur even when an oncology nurse takes every precaution. An unencumbered argument about the absent nurse expert would still have been speculation and likely would not have affected the outcome of the case. *See Shoup*, 335 Or at 172 (stating that, although not the test for determining prejudice, an outcome-related inquiry is useful in analyzing when trial court error is reversible).

■ Finally, we note that the trial court assessed the prejudice from any improper comment as minimal. The trial court is in the best position to evaluate the effect of attorney argument on the jury and whether that argument is prejudicial. *Amick v. Watson*, 280 Or 641, 645, 572 P2d 317 (1977). Here, the court found that the inference to be drawn from a witness not called was weak and was collateral to the dispute about defendant's culpability that was presented to the jury. Plaintiffs relied on *Bohle v. Matson Navigation Co.*, 243 Or 196, 412 P2d 367 (1966), to establish the propriety of the inference they wished the jury to draw. In *Bohle*, the court held that it was proper jury argument for a plaintiff to comment on the defendant's failure to call a physician who had examined the plaintiff at the defendant's request. The court said:

"In such circumstances we think that comment by counsel for the plaintiff on the failure of the defendant to call the

physician is allowable, since it is a natural inference that he would have been called if his testimony would help the defendant's case."

*Id.* at 198. In different circumstances, the inference may be less natural. Defense counsel announced her intent to call the nurse expert, implying that the expert's testimony would have been favorable. The failure to call an announced defense witness may create a more tenuous inference about the potential content of the expert witness's testimony than the failure to call an unannounced witness. As the trial court figured, speculation about what that witness might have said was somewhat beside the point and collateral to the issues of fact created by the witnesses who *did* testify. The court then determined that extra-record facts undercutting plaintiffs' inference were not prejudicial, given that the inference was not particularly strong and was tangential to issues of fact about defendant's negligence. We agree with the trial court's reasoning in that regard.

For those reasons, we conclude that plaintiffs have not met their burden of demonstrating that the claimed error was prejudicial. *See Shoup*, 335 Or at 173-74 (the burden to make a record that demonstrates prejudicial error is on the party that loses in the trial court and then seeks reversal or modification of the judgment on appeal).

Affirmed.