Argued and submitted September 14, 2009, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings December 30, 2010

Alan CLER
and Debi Cler,
*Petitioners on Review,*

*v.*

PROVIDENCE HEALTH SYSTEM - OREGON,
dba Providence St. Vincent Medical,
*Defendants,*

*and*

OREGON HEMATOLOGY ONCOLOGY
ASSOCIATES, PC.,
*Respondent on Review.*

(CC 0401-00189; CA A130443; SC S056715)

245 P3d 642

Stephen C. Hendricks, Hendricks Law Firm, P.C., Portland, argued the cause and filed the brief for petitioners on review.

Janet M. Schroer, Hoffman Hart & Wagner, LLP, Portland, argued the cause and filed the brief for respondent on review. With her on the brief was Marjorie A. Speirs.

DURHAM, J.

Linder, J., dissented and filed an opinion in which Balmer and Kistler, JJ., joined

## DURHAM, J.

Plaintiff Alan Cler suffered severe injury to his arm and hand after receiving intravenous chemotherapy treatment from defendant Oregon Hematology Oncology Associates, PC. Cler and his wife (plaintiffs) brought this action against defendant, alleging that one of defendant's nurses had caused Cler's injury by negligently administering the chemotherapy treatment. During defendant's closing argument, defense counsel made several factual statements regarding a nurse expert who did not testify at trial; the statements had no basis in this record. The trial court over-ruled plaintiffs' counsel's objections to the statements. The jury returned a verdict for defendant. On appeal, plaintiffs argued that the trial court had abused its discretion in allowing defense counsel, during closing argument, to present facts to the jury regarding the anticipated testimony of an expert witness that was not in the record. The Court of Appeals affirmed the trial court's decision. *Cler v. Providence Health System-Oregon*, 222 Or App 183, 192 P3d 838 (2008).[1] We allowed plaintiffs' petition for review and, for the reasons that follow, now reverse and remand for a new trial.

After Cler was diagnosed with Hodgkin's Lymphoma, a form of cancer, he opted to undergo chemotherapy treatment that included the intravenous injection of a drug called Adriamycin. Adriamycin can cause tissue damage if it leaks out of a patient's vein and into other tissues. During Cler's first chemotherapy session, an oncology nurse employed by defendant administered Adriamycin, which leaked from Cler's vein and caused severe damage to Cler's arm and hand. Plaintiffs filed this personal injury action, alleging that defendant's nurse had not met the standard of care required for an oncology nurse in her treatment of Cler. The case proceeded to jury trial.

At the beginning of trial, the parties offered opening statements. During her opening statement, defense counsel told the jury that she would be calling an oncology nurse, a

---

[1] Providence Health System-Oregon was dismissed from the action and is not a party to this appeal. All references to "defendant" are to Oregon Hematology Oncology Associates, PC.

nurse manager at Oregon Health Sciences University, to testify as an expert witness. Defense counsel offered a summary of the nurse expert's expected testimony, namely, that defendant's nurse had met the applicable standard of care for oncology nurses in administering intravenous chemotherapy treatment and that several other events and circumstances, all consistent with good care, could have resulted in the injury that plaintiff suffered.

On the fifth day of trial, plaintiffs were still presenting their case-in chief. Before plaintiffs called Cler as their last witness, defense counsel stated to the court, "Judge, I do have a doctor here, who I would like to be able to get on if I can." Plaintiffs' counsel objected. After an off-the-record discussion in chambers, the judge and the lawyers returned to the courtroom, and the judge addressed the jury: "Jurors, we're going to give [defense counsel] an opportunity to talk with a couple of her witnesses in the hallway and then we'll be resuming testimony just shortly." After a short break, plaintiffs' counsel called Cler to testify. The next day, defendant's oncology doctor expert testified. Defense counsel did not call a nurse expert to testify on defendant's behalf at trial.[2]

During closing argument, plaintiffs' counsel drew attention to defendant's failure to call a nurse expert:

"Can you imagine this institution, Oregon Hematology Oncology, and they have not called an independent nurse expert to justify the care in this case? * * *

"But on a case where we're talking about nursing care, and everyone agrees * * * when it comes to actually giving the drugs nowadays, this is nursing duty. Nurses do this. Doctors don't do this. They don't have an independent nurse expert.

"I mean, can you imagine? Now, there's a reason. It is probably because they couldn't get a nurse expert who

---

[2] The parties dispute the details of what occurred during the in-chambers discussion with the judge, as well as the details of the scheduling issues. In our view, the details surrounding the nurse's failure to testify are not pertinent to the question before us on review. The pertinent fact is that defendant did not ultimately call the oncology nurse expert to testify.

would say that this was okay care. That's the conclusion that's easy to draw on."

Defense counsel raised no objection to those statements. Instead, in her closing argument, defense counsel stated:

"Now, one thing I just want to mention before I forget, [plaintiffs' counsel] said that we didn't even call an oncology nurse. And I hope you remember that when I started my case, and I gave my opening statement, I told you that I had [two doctors] and [an oncology nurse] who is the nurse manager at OHSU and has 20 years' of experience in oncology. I hope you remember that—"

Plaintiffs' counsel objected that defense counsel was "close to testifying as opposed to addressing the evidence that was before the court." The trial court responded: "I'm going to let her continue * * * in the same vein that you addressed the evidence." Defense counsel continued by stating that, at one point during the trial, her nurse expert had been in the courtroom waiting to testify. After plaintiffs' counsel objected twice more, the trial court asked counsel to discuss the matter in chambers. Following that discussion, defense counsel continued her closing argument:

"[The oncology nurse expert] was here on [the fifth day of trial,[3]] prepared to testify in the afternoon. She sat in the courtroom all afternoon, and she didn't get on because [plaintiffs' counsel] was calling Mr. Cler in the afternoon. She had to leave on the following day. She got on a plane. She was scheduled to go on vacation. That's why you didn't hear from [her]. She was prepared to be here. She sat in the courtroom all that afternoon, and again, she was prepared to testify and would have testified in our case and supported our case."[4]

---

[3] Although defense counsel actually referred to the sixth day of trial, her reference to Mr. Cler and the surrounding context make it clear that she meant the fifth day of trial.

[4] Although plaintiffs did not object again at this point, we determine that plaintiffs' earlier objections adequately preserved plaintiffs' argument that defense counsel was impermissibly arguing facts not in evidence. As the trial court later observed in its order denying plaintiffs' motion for a new trial, "after the in-chambers discussion between the [trial court] and counsel, plaintiffs' counsel may have felt it would be futile to continue with his same objections."

In his rebuttal argument, plaintiffs' counsel addressed defense counsel's comments concerning the failure of the nurse expert to testify:

> "You heard me object to the thing about the nurse expert. I feel pretty strongly about this. Look, anybody that tries these cases knows that you better get your most important and your best witness on.

> "Now, you guys sat through the testimony and you know that we accommodated [defense counsel] by taking two witnesses out of turn. She had every, every opportunity to get a nurse expert in to testify in this case. If she didn't want to call that nurse at some particular time, there's another procedure that's available.

> "You can take a witness outside the bounds of the courtroom and you can do a videotape deposition and set up a camera and bring it in. You saw—I don't know if you saw there's a television in the courtroom for a couple of days. So you can play perpetuated testimony on a TV.

> "She had every opportunity under the rules that we do these cases to get this witness in here, and she did not. So I think that you still have to conclude there's a reason that she did not."

The trial court gave no special jury instructions regarding the nurse expert, but did give the jury the standard instruction that it must decide the case based on the evidence (testimony and exhibits) presented at trial and that counsel's opening statements and closing arguments are not evidence. The jury returned a verdict for defendant.

Plaintiffs filed a motion for a new trial, arguing, among other things, that the trial court had abused its discretion by permitting defense counsel to present facts in her closing statement that were not in evidence. The trial court denied plaintiffs' motion, concluding that the court's failure to sustain the objections that plaintiffs' counsel made during defense counsel's closing argument "did not substantially affect plaintiffs' rights" because the statements "were not probative of the substantive factual issues in the case, nor did they raise an issue with respect to the credibility of a witness." The court also noted that plaintiffs' counsel had been able to rebut defense counsel's statements in rebuttal "by

explaining ways in which defendant could have preserved the expert's testimony for trial and by suggesting that defense counsel made choices regarding the order in which she called her experts."

Plaintiffs appealed, assigning error to the trial court's ruling on plaintiffs' objections to the statements made in defendant's closing argument. The Court of Appeals agreed with plaintiffs that the trial court had abused its discretion in allowing improper argument by defense counsel during closing statements. *Cler*, 220 Or App at 189. The court concluded, however, that the error did not substantially affect plaintiffs' rights for three reasons: (1) the trial court instructed the jury that opening and closing statements are not evidence; (2) the discussion of plaintiffs' nurse expert "was not even a forkful of the entire evidentiary pie;" and (3) the trial court, which was in the best position to evaluate the effect of the improper argument, assessed any prejudice to plaintiffs as minimal. *Id.* at 191-92. Accordingly, the Court of Appeals affirmed the trial court judgment.

On review, the parties reprise the arguments that they made to the Court of Appeals. Plaintiffs argue that a trial court abuses its discretion by allowing counsel to deliberately relate facts not in evidence to the jury during argument, and that such action is *per se* prejudicial because it violates the other party's "right to a fair trial within well-established rules." In response, defendant argues that a trial court does not abuse its discretion by allowing counsel to introduce facts not in evidence during argument when those facts are collateral and when the opposing counsel has "opened the door" with his or her own improper argument. Defendant further argues that, on this record, plaintiffs cannot demonstrate that the statements at issue by defense counsel were sufficiently prejudicial so as to warrant reversal.

We review a trial court's decisions regarding control of jury argument for an abuse of discretion. *R.J. Frank Realty, Inc. v. Heuvel*, 284 Or 301, 306, 586 P2d 1123 (1978). In general, in presenting closing arguments to the jury, counsel have "a large degree of freedom" to comment on the evidence submitted and urge the jury to draw any and all legitimate inferences from that evidence. *Huber v. Miller*, 41 Or

103, 115, 68 P 400 (1902). However, that freedom is not without limitations:[5] One such limitation is that counsel may not make "statements of facts outside the range of evidence." *Id.; see also* John H. Wigmore, 6 *Evidence in Trials at Common Law* § 1807 (Chadbourn rev 1979) ("[C]ounsel must not make assertions as to facts of which evidence must have been introduced but has not been or will not be introduced." (emphasis omitted)); *Trial*, 88 CJS 353 § 309 (2008) ("Counsel must be confined to the issues and the evidence, and will not be allowed to comment on or state facts not in evidence or within the issues.").

■ In closing argument in this case, over plaintiffs' counsel's objection, defense counsel made four statements of fact that were not testified to by any witness or otherwise admitted into evidence: (1) an oncology nurse manager with 20 years of experience had been prepared to testify on defendant's behalf; (2) the nurse expert had been waiting in the courtroom to testify on the afternoon of the fifth day of trial; (3) the reason that the nurse expert did not testify was because plaintiffs' counsel called a witness that afternoon and the nurse expert had to go on vacation the following day; and (4) if the nurse expert had testified, she would have "supported [defendant's] case." Defense counsel had no basis in the record to offer those statements to the jury in her closing argument.

Defendant submits that, in this case, the extra-record statements were proper because, during closing argument, plaintiffs' counsel had commented on defendant's failure to call a nurse expert, asking the jury to draw the inference that defendant could not find a nurse expert who would have testified that the nurse who treated Mr. Cler had acted within the applicable standard of care. According to defendant, plaintiffs' counsel's comment was improper because plaintiffs' counsel was aware that the nurse expert had not testified because of scheduling issues. As a result,

---

[5] *See, e.g., R.J. Frank Realty*, 284 Or at 306 (counsel should refrain from abusive arguments); *State Highway Comm'n v. Callahan*, 242 Or 551, 558, 410 P2d 818 (1966) (arguments that are "highly inflammatory * * * and had no reasonable relevance" to the issues in the case are improper); *Bratt v. Smith*, 180 Or 50, 60, 175 P2d 444 (1946) (arguments that directly appeal to "passion and prejudice" are beyond the bounds of legitimate comment on the evidence).

defendant concludes, plaintiffs' misleading statements "provoked" or "invited" defense counsel's statements. We disagree.

■ In calling attention to defendant's failure to call a nurse expert, plaintiffs' counsel invoked the missing witness inference. In general terms, that inference provides that, "[w]hen it would be natural under the circumstances for a party to call a particular witness * * * and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference." 2 *McCormick on Evidence* § 264, at 220 (6th ed 2006). In *Bohle v. Matson Navigation Co.*, 243 Or 196, 198, 412 P2d 367 (1966), the court approved generally the use of that inference, holding that the plaintiff's counsel in a personal injury case should have been allowed to comment in closing argument on the failure of the defendant to call a doctor who had examined the plaintiff at defendant's request because "it is a natural inference that he would have been called if his testimony would help the defendant's case." *Id.* The invocation of the missing witness inference by plaintiff's counsel was consistent with the holding in *Bohle.* As the trial court acknowledged, plaintiff's counsel's comments "addressed the evidence" in the trial record.

■ If a party believes that an opponent has invoked the missing witness inference improperly, the party is not without recourse. The party may timely object, and, if necessary, move to strike or request a curative jury instruction. If evidence in the record provides an alternative explanation for a party's failure to call a witness, that party properly may comment thereon. *Trial*, 88 CJS 360 § 313 ("It is proper for counsel to account for the absence of a desired witness where such absence would be a proper subject for comment by his or her opponent, *where the explanation is based on evidence in the record,* but not otherwise." (emphasis added; footnote omitted)). But a party may not pursue the course of action that defendant chose in this case: A party may not deprive the court of the opportunity to rule on the propriety of an opponent's statement by remaining silent during the opponent's closing argument, and then resorting to self-help by presenting argument based on facts not in evidence. Here, defense

counsel failed to object to plaintiffs' counsel's use of the missing witness inference in closing argument. Defense counsel never placed the propriety of plaintiffs' counsel's statements at issue at trial and that issue is not properly assigned as error on review.

■        The Court of Appeals, in assessing whether the trial court abused its discretion, determined that jury argument may refer to matters that are within the scope of the issues and the evidence, but that evidence outside the record may not be suggested by any means. 222 Or App 183. For that proposition, the Court of Appeals cited ORS 40.025(3) (OEC 103(3)), which provides:

> "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."

We agree with the Court of Appeals. Accordingly, we have no trouble also agreeing with the Court of Appeals that the trial court abused its discretion by overruling plaintiffs' objections to defendant's improper argument.

■        Having concluded that the trial court abused its discretion in allowing defense counsel's statements, we turn to the question of whether that error requires reversal. We will reverse a trial court's judgment only if the trial court's error substantially affected a party's rights. *See* ORS 19.415(2) ("No judgment shall be reversed or modified except for error substantially affecting the rights of a party.").

■        In addressing plaintiffs' contention that defense counsel's statements regarding facts not in evidence substantially affected plaintiffs' rights, we focus first on the particular right at issue in this case: the right to require opposing counsel to confine her closing argument to the jury to facts admitted into evidence and permissible inferences from those facts. Although not evidence themselves, closing arguments "are an integral part of trial" that can alter the result of the trial:

> "They provide the attorneys with their final opportunity to 'persuade the jury to adopt a particular view of the facts.'

*Ireland v. Mitchell*, 226 Or 286, 295, 359 P2d 894 (1961). It is through closing arguments that the attorneys are able to fully frame the issues and remind the jury of evidence that they may have heard days earlier. Further, arguments give the attorneys a chance to explain the evidence in narrative form. That narrative function of arguments—the opportunity to tell the story of the case—is essential to effective advocacy, and the ability to do so can alter the jury's understanding of the evidence and ultimately change the outcome of a given case."

*Charles v. Palomo*, 347 Or 695, 705, 227 P3d 737 (2010) (holding that the trial court's error in denying the plaintiff rebuttal argument substantially affected the plaintiff's rights). The integrity of closing arguments can only be ensured when the court requires the parties to limit their arguments to the facts in evidence and permissible inferences from those facts. *See Kuehl v. Hamilton*, 136 Or 240, 249, 297 P 1043 (1931) (noting that "[e]very litigant is entitled to a fair trial, and this result cannot be achieved if counsel is permitted to make statements to the jury of facts not testified to by any witness nor admissible in evidence"). Thus, a party's introduction of facts not in evidence during closing arguments can substantially affect the opposing party's rights.

We determine that, in this case, defense counsel's introduction during closing argument of facts not in evidence substantially affected plaintiffs' rights. In his closing argument, plaintiffs' counsel framed his narrative of the case. One aspect of that narrative involved asking the jury to draw an inference from defendant's failure to call a nurse expert.[6] Defense counsel then framed a different narrative of the case, but in doing so, impermissibly interjected extra-record facts into the case after the parties had rested. Defense counsel introduced those facts over plaintiffs' counsel's repeated objections and after an in-chambers discussion between the court and counsel. In that context, from the jury's perspective, defendant's account of the absence of the nurse expert would appear to have received the trial court's imprimatur.

---

[6] The dissent asserts that we have treated plaintiffs' jury argument as irrelevant to the analysis of prejudice. We disagree. We have considered the entire record, including plaintiff's jury argument, to determine whether the trial court's error "substantially affect[ed] the rights of a party." ORS 19.415(2).

492

Thus, plaintiffs' counsel's ability to rebut defense counsel's explanation of the nurse expert's absence was weakened substantially.

██    Moreover, by making the assertion that the nurse expert "would have supported" defendant's case, defense counsel supplied, at least in general terms, the testimony of a witness who was not subject to oath or cross-examination.[7] *See* ORS 40.320(1) ("Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation * * *.); Wigmore, 6 *Evidence in Trials at Common Law* § 1806 (when counsel argues facts not in evidence, counsel becomes a witness without being subject to cross-examination, in violation of the fundamental purpose of the hearsay rule). The trial court's admonition to the jury that the lawyers' arguments "are not evidence" does not overcome that problem, in our view. That admonition operates on the assumption, noted above, that the record evidence frames the context within which lawyer argumentation permissibly may occur. The court's admonition helps the jury understand that it must not confuse a lawyer's advocacy about the record with the actual witness testimony and other evidence that the court has admitted into the record in accordance with the rules of evidence. The comments of defense counsel to the jury here, however, did not simply convey her view of the record evidence. Rather, defense counsel characterized for the jury the purported testimony of a witness who never took the

---

[7] The dissent has determined that plaintiffs' argument to the jury was not proper and amounted to a misrepresentation. From that premise, the dissent argues that defense counsel sought only to correct that misrepresentation by referring to facts that, according to the dissent, the jury likely already knew by, for example, viewing people sitting in the courtroom during trial and speculating about how they might testify if called. We decline to consider those assertions as facts established in the record. Although the dissent cites several legal propositions with which we have no disagreement, we read the factual record quite differently; our different reading of the record supports our disposition here. For example, in our view, plaintiffs' counsel's closing argument was not a misrepresentation and was not improper. That is so because, according to the record, the defense had not called a nurse expert witness, either in person or by introducing an expert's testimony through a deposition. Nothing compelled plaintiffs' counsel to concur with defense counsel's asserted reason for not calling the expert witness or the claim that the witness would have supported defendant's case. The dissent apparently believes that defense counsel conveyed nothing of the actual substance of the nurse expert's testimony to the jury but, again, we read the record differently and reach a different conclusion.

witness stand. That conduct creates an unacceptable risk that the jury would consider the statement as that of the unsworn witness and not solely that of the lawyer. ORS 40.025(3) deters the suggestion of inadmissible evidence to the jury by any means, including through counsel's statements; it does not somehow authorize that sort of conduct so long as the trial court admonishes the jury that the statements are not evidence. For that reason, the court's admonition to the jury does not eliminate the prejudicial effect of the trial court's error.

The assertion that a nurse expert would have supported defendant's position was material to the central issue in the case: whether defendant's nurse complied with the applicable standard of care for oncology nurses. Because defense counsel's assertion that the nurse expert "would have supported" defendant's case was not based on evidence in the record, the court's ruling deprived plaintiffs' counsel of the opportunity to cross-examine that factual assertion or otherwise rebut defense counsel's factual claim. In light of those circumstances, we conclude that the trial court's failure to sustain plaintiffs' objections to defense counsel's comments substantially affected plaintiffs' rights. ORS 19.415(2).

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**LINDER, J.,** dissenting.

A common situation in jury trials, both civil and criminal, is the problem of the so-called "invited response" or "invited reply." It occurs when one party, in closing argument, resorts to an improper argument that, if left unaddressed, could mislead the jury or otherwise encourage the jury to base its verdict on an impermissible consideration. The other party fails to object and, to counter the provoking argument, resorts to improper argument in response. If the party who provoked the exchanges loses and appeals, it often falls to the appellate court to determine in such a circumstance whether the "invited response" was error and, if so, whether the error was prejudicial and warrants a new trial.

In this classic "invited response" situation, the majority holds that the fact that one party engages in improper argument does not mean that the opposing party may do the same in response. Thus, if the "invited response" is improper in substance, and if there is a timely objection to it, the trial court must sustain the objection. I agree with that portion of the majority's holding, which is consistent with this court's precedents and with the better rule endorsed in other jurisdictions.

The majority takes a serious misstep in further holding, however, that the provoking argument is irrelevant in determining whether the error warrants reversal. To the contrary, the substance of the provoking argument is context for accurately evaluating the likelihood that the jury's verdict was influenced by an impermissible consideration. As I will discuss, plaintiffs in this case invited the jury to draw an unfavorable inference against the defense that the evidence in the record did not support. In response, defendant, too, improperly went beyond the evidence in the record. Considered in context, however, defendant's argument merely offset the improper inference that plaintiffs had invited the jury to draw. The only "prejudice" to plaintiffs was that they may have been deprived of the benefit of their own improper argument. Consistent with our precedents, the considered rule adopted by other courts, and our constitutional obligation to affirm in the absence of prejudice, plaintiffs are not entitled to a reversal and a new trial in this case. For that reason, I dissent.

I begin by recapping the pertinent facts. In this medical negligence case, the defense in opening statements to the jury briefly summarized the expected testimony of three experts it intended to call in support of its case, including that of a nurse manager of the oncology unit at Oregon Health and Science University. On the day that the nurse expert was to testify, she was in the courtroom throughout the afternoon. The defense did not call her that day due to scheduling issues, however. Because the nurse expert was leaving town the next day on a prescheduled vacation, the defense did not call her on either of the two remaining days of trial. By the time the parties presented closing arguments to the jury, defense counsel had explained to plaintiffs' counsel

(as well as to the trial court) why the nurse expert had not testified. Despite his awareness of that explanation, plaintiffs' counsel during closing argument told the jury that "there's a reason" why plaintiffs had not called a nurse witness, that it was probably because the defense could not find one that would testify in its favor, and that the jury should so conclude.

Defense counsel did not object. In her closing argument, after arguing in detail and at length about the significance of the testimony of each side's experts, defense counsel noted that she wanted to "mention" something in response to plaintiffs' counsel's argument about defendant's failure to call an oncology nurse. Defense counsel reminded the jury that, in opening statements, she had indicated that she was going to call a nurse expert with 20 years of experience. Plaintiffs' counsel did not formally object at that point, but did voice concern to the trial court about where counsel might be headed with her argument. The trial court indicated that it would let defense counsel continue "in the same vein" in which plaintiffs' counsel had addressed the argument. Defense counsel continued by explaining why the nurse expert did not testify. Plaintiffs' counsel interrupted, objecting (more than once) that defense counsel was relying on facts not in evidence. The trial court, after discussing the matter in chambers with counsel, overruled the objection. Defense counsel completed her explanation to the jury, briefly reminding it that defendant's nurse expert had been in the courtroom, describing the scheduling conflict that caused defense counsel not to call the nurse expert, and stating that the nurse expert otherwise would have "testified in our case and supported our case."

In plaintiff's rebuttal argument, plaintiffs' counsel replied to defense counsel's response. Counsel asserted, without objection, that the defense had "every opportunity" to put that nurse expert on the stand and explained how the defense could have deposed or otherwise perpetuated the nurse expert's testimony. Plaintiffs' counsel concluded by again urging the jury to draw an inference against the defense from its failure to call a nurse witness. After deliberating, the jury returned a verdict for the defense.

As plaintiffs successfully argued to the Court of Appeals, and argue again to this court, defense counsel, in explaining why the nurse expert did not testify, impermissibly referred to facts that were not in evidence. *See generally Huber v. Miller*, 41 Or 103, 115, 68 P 400 (1902) (a party in closing argument may not make "statements of facts outside the range of evidence" or "assume a fact as though proven when no such inference can be reasonably drawn from the evidence"). In particular, defense counsel described the scheduling problems that caused her not to call the nurse expert who, in opening statements, she had said she would call. She also told the jury that the nurse expert would have testified in support of the defendant's case. No "evidence" in the record established those "facts."[1] When the trial court allowed defense counsel to argue over plaintiffs' timely objections on that ground, the trial court erred. *See generally State v. Blodgett*, 50 Or 329, 342, 92 P 820 (1907) (if one party argues facts not in evidence and not otherwise admissible, trial court must sustain objection to that argument, rather than leave the other side to refute the assertions in reply).

Plaintiffs' argument, however, was equally improper. In closing argument, after expressing incredulity at defendant's failure to call a nurse expert, counsel told the jury that "there's a reason" why defendant did not do so, and it was "probably because they couldn't get a nurse expert who would say that this was okay care." After defense counsel explained the scheduling issue that arose, plaintiffs' counsel in rebuttal advised the jury of ways in which the defense could have perpetuated the witness's testimony, and urged the jury again to draw an unfavorable inference against the defense from its failure to call a nurse expert. Plaintiffs' counsel advanced those arguments knowing that the defense had a nurse

---

[1] For present purposes, I am willing to presume that a description to the jury of the scheduling problem that arose during the trial is a "fact not in evidence" within the meaning of that familiar doctrine. It is less than clear to me, however, whether that is correct. Juries are often apprised of scheduling issues and other procedural events, if for no other reason than to explain why continuances, protracted recesses, or other changes to the expected trial schedule have become necessary. Explaining such circumstances to a jury is not the kind of information that ordinarily is delivered by sworn testimony. *Cf. United States v. Long*, 533 F2d 505, 509 (9th Cir 1976) (trial court properly advised jury that informant's failure to testify was due to court's procedural ruling).

expert that it intended to call and aware of defense counsel's reasons for not calling her.[2]

In making that argument, plaintiffs invoked a so-called "missing witness" inference—*e.g.*, "[w]hen it would be natural under the circumstances for a party to call a particular witness, or to take the stand as a witness in a civil case * * * and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference." 2 *McCormick on Evidence* § 264, 220 (6th ed 2006). For present purposes, it is not necessary to explore the intricacies of the inference and when it is properly invoked.[3] It suffices to observe that the inference does not arise from "the bare fact that a particular person is not produced as a witness." John Henry Wigmore, 2 *Evidence* § 286, 199 (Chadbourn rev 1979); *see also Tenny v. Mulvaney*, 8 Or 513, 521-22 (1880) (mere fact that witness was not called was not sufficient to support inference that witness's testimony would have been unfavorable to defendants). Rather, it is proper only when the particular circumstances of a case support it, such as when it would be natural for a party to call a particular witness, and the party, without explanation, has failed to do so. *See generally Bohle v. Matson Navigation Co.*, 243 Or 196, 198-99, 412 P2d 367 (1966) (stating general rule). Among the limitations on the inference is the requirement that the witness in fact be within the power of the party to produce, both legally and practically. *State v. Hatcher*, 29 Or 309, 317-18, 44 P 584 (1896) (party cannot urge adverse inference from failure to call a witness where record did not

---

[2] Although the parties disputed certain facts pertaining to the scheduling issues at trial, the only pertinent fact for purposes of the issue on review, which is *not* disputed, is that plaintiffs' counsel had been informed, before closing argument, why defense counsel did not call its nurse expert. In all events, to whatever extent there were factual disputes pertinent to the issue we must decide, they were implicitly resolved against plaintiffs by the trial court.

[3] The rules limiting the availability of the inference do so because it so readily invites abuse by counsel. As one commentator has observed: "Too often the [missing witness] rule is treated as just another weapon available for the duel between the lawyers. Counsel invoke the inference of adverse testimony without any concern for the actual content of the evidence and sometimes even urge an inference known to be false just to gain an advantage." Robert H. Stier, Jr., *Revisiting the Missing Witness Inference—Quieting the Loud Voice from the Empty Chair*, 44 Md L Rev 137, 155 (1985).

show that witness was within the power of the party to produce); *see generally* Wigmore, 2 *Evidence* § 286 at 200-02 (stating limitation and citing representative cases). If, for example, a person is disqualified as a witness or could not be called due to illness or some other practical circumstance, the inference is not permissible. *Id.* (citing representative cases).[4]

In the circumstances of this case, plaintiffs' resort to the missing witness inference was not proper argument. Plaintiffs' counsel invited the jury to draw an inference that he had no basis to believe was true (*i.e.*, that no nurse expert was prepared to testify in favor of defendant), and had ample reason to believe was not true, given defense counsel's explanation in advance of closing arguments that her nurse expert did not testify due to scheduling issues. No authority approves of the missing witness inference when the party seeking the inference has been previously informed—as plaintiffs' counsel had been here—that the defense had not called the witness due to scheduling issues.[5] Analogous cases, instead, uniformly hold that the inference is not permissible in such a circumstance. *See, e.g., Bender v. Adelson,* 187 NJ 411, 433-46, 901 A2d 907 (2006) (where plaintiff knew that defendants had two independent expert witnesses who were precluded from testifying for procedural reasons, permitting missing witness inference was error because it

---

[4] The missing witness inference is "always open to explanation" by the party against whom the inference is invoked. Wigmore, 2 *Evidence* § 285 at 192. The fact that the inference is usually advanced in closing argument therefore poses problems of fairness and judicial efficiency. As one authority cautions, "[t]he possibility that the inference may be drawn invites waste of time in calling unnecessary witnesses or in presenting evidence to explain why they were not called." 2 *McCormick on Evidence* § 264 at 223. The inference also can entail "substantial possibilities of surprise." *Id.* Because of those problems, some jurisdictions require the advance permission of the trial court before arguing the inference. *See, e.g., Thomas v. United States,* 447 A2d 52, 58 (DC 1982) (because of dangers of missing witness argument, which essentially creates evidence from nonevidence, permission of court must be obtained before inference can be suggested to jury; onus is not on the party against whom an inference is made to object after the fact).

[5] Neither do plaintiffs cite any authority to suggest that their argument under these circumstances was proper. They rely principally on *Bohle,* which merely states the baseline principle that a missing witness inference is proper *when* the particular circumstances are such that the inference is a natural one to draw. 243 Or at 198-99. Beyond that, plaintiffs merely assert, without elaboration or evident support, that their own closing argument to the jury was "reasonable and well established under Oregon law."

"implied an untruth" and played on jury's ignorance of actual reason why witnesses did not appear; error required new trial).[6]

By urging the missing witness inference when it was not a permissible one, plaintiffs themselves invited the jury to rely on a "fact"—*i.e.*, the inferred fact that defense counsel could not find any nurse expert to testify in its favor—that was not established by evidence in the record. That is the essential problem with a missing witness inference in circumstances that do not adequately support it. *See generally Hatcher*, 29 Or at 315-16 (counsel's impermissible reliance on missing witness inference resulted in arguing facts to jury that were not in evidence); *Tenny*, 8 Or at 521 (same).

The significant question that this case presents, therefore, is not whether a party may argue facts or inferences that lack evidentiary support in the record. It is undisputed that, as a general proposition, a party may not. The significant question is, instead, whether it is relevant to the analysis that the party was provoked to do so to respond to an improper argument made by the opposing side.

On that point, the numerous courts in other jurisdictions that have wrestled with the "invited response" problem uniformly consider the provoking improper argument relevant. They differ only on the question: Relevant to what? One line of authority holds that the provoking argument is relevant to determine whether the "invited reply" is error at all or, if error, whether the provoking party is estopped to raise the error on appeal.[7] The other line of authority rejects the

---

[6] *See also Calvin v. Jewish Hosp. of St. Louis*, 746 SW2d 602, 605 (Mo App 1988) ("When a witness'[s] testimony is excluded on an attorney's motion, it is misconduct constituting manifest injustice and thus reversible error if that attorney requests the jury to draw an adverse inference from his opponent's failure to produce that witness even though the error is not preserved for appellate review.").

[7] Cases so holding are far too numerous to cite. For representative civil and criminal cases holding that an invited response is not error, *see Richmond Condominiums v. Skipworth Plumbing*, 245 SW3d 646, 668 (Tex Ct App 2008) (defense counsel's "invited" closing argument not improper when in response to and confined to the provoking argument of opposing counsel); *United States v. Schwartz*, 655 F2d 140, 142 (8th Cir 1981) (under "doctrine of fair reply," government's reply to defense counsel's statements in closing "not improper" because defense counsel "open[ed] the door" on the issue). For representative cases holding that the provoking party is estopped to claim error on appeal, *see Fredrick v. Dreyer*, 257 NW2d 835, 839 (SD 1977) (general rule is that party whose counsel

proposition that a provoking improper argument justifies or precludes appellate review of an improper argument in response; those courts, however, consider the provoking argument a highly relevant consideration in determining whether a reversal is warranted. As the United States Supreme Court has explained in the lead case taking that approach, the invited response doctrine does not give a party "license to make otherwise improper arguments" in response to an improper argument; it does, however, inform whether the " 'invited response,' taken in context, unfairly prejudiced" the opposing side. *United States v. Young*, 470 US 1, 12, 105 S Ct 1038, 84 L Ed 2d 1 (1985). The provoking argument is important context for that evaluation, because it informs whether the response merely offset the misleading nature of the provoking argument, thus producing "no net effect on the jury's deliberations." *United States v. Mazzone*, 782 F2d 757, 763 (7th Cir), *cert den*, 479 US 838 (1986). In other words, to assess whether the jury was "led astray," the substance of the invited response must be evaluated in the context of the "opening salvo." *Young*, 470 US at 12; *see also Darden v. Wainwright*, 477 US 168, 182, 106 S Ct 2464, 91 L Ed 2d 144 (1986) (invited response doctrine does not "excuse improper comments," but instead seeks to accurately assess "their effect on the trial as a whole").

Although this court has not discussed or examined the invited response situation in any depth, our precedents are in general accord with that latter approach. The cases on point hold that the fact that one party advances an improper argument to the jury does not excuse or otherwise make it proper for the opposing party to respond in kind. *See, e.g., Walker v. Penner*, 190 Or 542, 553, 227 P2d 316 (1951) (" '[T]he mere fact that counsel for one party has injected improper matter into the case does not license opposing counsel to commit a similar wrong'[.]") (quoting *Trial*, 64 CJ § 300, 281); *State v. Blodgett*, 50 Or 329, 92 P 820 (1907) (same). But this court also has been unwilling to reverse such an error,

pursues improper argument and invites reply is estopped to complain); *State v. Hall*, 982 SW2d 675, 683-84 (Mo 1998), *cert den*, 519 US 1083 (1997) (defendant may not provoke reply with own closing argument and then assert error on appeal to prosecution's comment in response).

even with timely objection, unless the objecting party was prejudiced, which depends on "the issue involved and the state of the evidence." *Blodgett*, 50 Or at 344; *see also Kuehl v. Hamilton*, 136 Or 240, 248, 297 P 1043 (1931) (reversal not warranted where closing argument that placed facts not in evidence before jury did not materially prejudice the objecting party).

In assessing the likelihood that the jury's verdict was influenced by an impermissible consideration, this court has considered the substance of the provoking improper argument, as well as that of the responding argument. *See, e.g., McKay v. Pacific Bldg. Materials Co.*, 156 Or 578, 591-92, 68 P2d 127 (1937) (not reversible error for plaintiff to improperly refer to defendant's ability to obtain insurance where argument was in response to misleading suggestion by defense that it could not obtain insurance, when in fact defendant could do so and had done so); *Storla v. S. P. & S. Trans. Co.*, 140 Or 365, 369-70, 12 P2d 1009 (1932) (where defense in closing argument urged jury that verdict would cause defendant "a lot of harm" and "hard days of toil" knowing that defendant was indemnified by insurance, court declined to reverse based on responsive argument that verdict would not cost defendant "one cent").[8] And this court has endorsed the general observation that " 'improper language used in argument is not ground for reversal, where such language was provoked by the remarks of counsel for the adverse party' " unless " 'it appears quite plainly that the verdict was influenced thereby.' " *Walker*, 190 Or at 553-54 (quoting *Trial*, 64 CJ § 300, 281). That observation is consistent with the usual experience of courts reviewing invited responses for prejudice, which is that, when the response is not out of proportion to the provocation, the two arguments will often counter one another in a way that does not prejudicially influence the jury's deliberations. *See Young*, 470 US at 12 (observing that

---

[8] This court in *Storla* arguably followed an estoppel rationale. 140 Or at 370 (party who provoked improper argument could not "with good grace" complain about argument made in response). But the court's examination of the substance of the two arguments suggests that, in fact, the court reached the claim of error, but deemed the responsive argument, in the context of the argument that provoked it, not prejudicial.

most intermediate courts, in reviewing an invited response in the context of the argument that provoked it, find no prejudice justifying reversal as long as the responsive argument is a reasonable reply to the provocation).[9]

In this case, the majority takes a very different approach, one that no other jurisdiction or authority appears to endorse. The majority treats plaintiffs' own improper provoking argument as *irrelevant* to the prejudice analysis by deeming it not in issue given defense counsel's failure to object to it. 349 Or at 490. That, however, is an inadequate answer. The failure to object to an improper argument does not make the argument itself proper. *See generally Kuehl*, 136 Or at 249 (trial courts, consistently with their traditional power to properly oversee the arguments of counsel, should intervene to stop arguments based on facts not in the record, despite the lack of objection); *Zimmerle v. Childers*, 67 Or 465, 474, 136 P 349 (1913) (same).[10] The failure to object means only that, if the verdict is against the nonobjecting party, that party generally may not rely on the error as a ground for reversal on appeal, unless the error qualifies as "plain error." *State v. Montez*, 309 Or 564, 601-02, 789 P2d 1352 (1990) (declining to consider claim of error in closing argument where defendant did not object and issue was not plain error).

Here, plaintiffs, who made the initial provoking argument, not defendant, ask this court to dislodge the jury's verdict and remand this case for a new trial. In keeping with our constitutional obligation, if plaintiffs are to have that remedy, they must identify prejudice by demonstrating that defendant's closing argument may have caused the jury to base its verdict on an impermissible consideration, rather than on the evidence. Or Const, Art VII (Amended), § 3 (the court must affirm a judgment on appeal, "notwithstanding

---

[9] *See generally Trial*, 75A Am Jur 2d 63-64 § 470 (2007) ("The law indulges a liberal attitude toward comments which are a fair retort or response to the prior argument of opposing counsel. Thus, arguments which are replies in kind or are provoked by arguments of opposing counsel do not amount to reversible error.").

[10] *See also Young*, 470 US at 8-10 (trial courts should promptly intervene and deal with improper arguments by counsel "on both sides of the table," regardless of lack of objection, to ensure fairness of the proceedings and adherence to professional standards of conduct).

any error committed during the trial," if the judgment "was such as should have been rendered in the case").

This record does not support such a conclusion. Even considered in isolation, defense counsel's argument lacked substance. Defense counsel explained that the defense had been prepared to call an experienced nurse oncologist, that it did not do so due to witness scheduling problems, and that the nurse expert would have testified and "supported [defendant's] case." The only fact among those that had not already been stated during counsel's opening statements to the jury was the fact that the nurse did not testify due to scheduling reasons. And it required no leap of faith or logic for the jury to have concluded, from the fact that the defense intended to call a nurse expert, which the jury knew, and from the fact that she was in the courtroom throughout the afternoon on which she was scheduled to testify, which the jury likely observed, that the testimony of that expert would support the defense case in some way. Defense counsel's closing argument related nothing more. In particular, defense counsel relayed *nothing* of the actual substance of the testimony that the nurse expert had been expected to give.

But in all events, considered in context, the statements did no more than correct the misrepresentation that plaintiffs' counsel created. That is, defense counsel's statements neutralized the misleading inference that plaintiffs' counsel expressly invited the jury to draw—that the defense could not find a nurse expert who "would say that this was okay care." When defense counsel responded to that argument, she did not ask the jury to draw any affirmative conclusion. Rather, defense counsel expressly referred to plaintiffs' argument, and explained the circumstances. *In context*, the only point of the argument—and no other point was made— was to have the jury not indulge the inference that plaintiffs had invited. As is often true of invited responses, the net effect of that argument was merely to counter plaintiffs' own argument and to encourage the jury not to base its verdict on the missing witness inference.

When, as happened here, an improper invited response principally served to deprive the provoking party of

the benefit of its misleading argument to the jury, that is not, under our constitution, a basis on which an appellate court may disturb the jury's verdict and give the party a new trial. Yet, that is the "prejudice" identified by the majority, which finds reversible error in this case because plaintiffs' effort to have the jury draw the missing witness inference was "weakened substantially" by defendant's response. 349 Or at 492. The inference was not a permissible one in this case, and the fact that plaintiffs may have been deprived of the benefit of their improper argument is not cognizable "prejudice" and not ground for reversal.[11]

Finally, the relevant context properly must consider the trial court's instructions to the jury. Here, the trial court twice instructed the jury that the statements of counsel were not evidence—once at the beginning of the trial and again immediately before closing arguments. The majority is inappropriately dismissive of the value of those instructions. 349 Or at 492. This court generally presumes that a jury adheres to a trial court's instructions, *Wallach v. Allstate Ins. Co.*, 344 Or 314, 326, 180 P3d 19 (2008), and does so in "invited reply" situations. *See, e.g., Walker*, 190 Or at 554 (considering court's instructions as factor in whether improper invited response was reversible error). Such an instruction might not cure a highly prejudicial closing argument, in which counsel extensively argued inflammatory off-the-record facts that under no circumstance would have been admissible during the trial. *See, e.g., Blodgett*, 50 Or at 344 (reversal for improper argument warranted where argument injected highly inflammatory and prejudicial material that "no one" would "contend for a moment" would have been

---

[11] Worth noting is that plaintiffs, in all events, got the final word and a last chance to encourage the jury to do what it should not do—draw an unfavorable inference against the defense from the fact that the defense did not have the nurse witness. As already described, plaintiffs' counsel argued in rebuttal that the defense could have called the nurse witness; he explained—by going beyond the record—ways in which the defense could have perpetuated the nurse witness's testimony despite the scheduling problems, and he urged the jury a final time to conclude that "there was a reason" why the defense did not call the nurse witness. Plaintiffs were not entitled to that inference, but they got a further chance to urge it to the jury, without objection by the defense, and with the tacit approval of the trial court.

admissible during trial). But this is a far distance from that circumstance.

For those reasons, I respectfully dissent.

Balmer and Kistler, JJ., join in this dissent.